## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Stephanie Henry, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-363 |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| vs. | |
| Nissin Foods (U.S.A.) Co. Inc. | |
| *Defendant* | |

## <u>Class Action Complaint</u>



*An example product sold by Defendant.  The product includes added MSG.*

## Table of Contents

I.    Introduction. ........................................................................................................ 1

II.    Parties. .............................................................................................................. 1

III.    Jurisdiction and Venue. ..................................................................................... 1

IV.    Facts. ................................................................................................................ 2

    A.    Free glutamates. ....................................................................................... 2

    B.    MSG. ......................................................................................................... 3

    C.    Labelling a food that contains free glutamates "No MSG" or "No added MSG" is false and misleading and unlawful. ........................................... 4

    D.    Defendant makes, markets, and sells products that are labelled "No added MSG," and advertises that those products have"No added MSG." ....................... 6

    E.    Defendant's claims and labels are false, misleading, and unlawful because in truth, ingredients containing free glutamates, including specifically MSG, are added to Defendant's products. ............................................ 11

    F.    Defendant's "NO ADDED MSG" representations are misleading to reasonable consumers. ......................................................................... 14

    G.    Plaintiff was misled by Defendant's misrepresentations. ..................... 18

V.    Class Action Allegations. ............................................................................... 19

VI.    Claims. ............................................................................................................ 21

Jury Demand. ............................................................................................................ 28

Prayer for Relief. ...................................................................................................... 28

i

## I.    Introduction.

1.    Defendant makes, sells, and markets several popular brands of premade noodle products including Cup Noodles, Top Ramen, Hot & Spicy, and Chow Mein.  The products prominently state: "NO ADDED MSG."

2.    By prominently labelling the products "NO ADDED MSG," Defendant led Plaintiff and other reasonable consumers to believe that their products do not contain MSG or MSG-equivalent free glutamates.  But the truth is that the products contain ingredients such as autolyzed yeast extract that actually do contain MSG.  Accordingly, the products that Defendant prominently labels "NO ADDED MSG" actually do have added MSG.  And by labelling its products in this manner, Defendant misled consumers about their products—and violated the FDA Act as well as the consumer protection laws of many states.

## II.    Parties.

3.    Plaintiff Stephanie Henry is a citizen of New York domiciled in Queens, New York.  The proposed class (identified below) includes citizens of every state.

4.    Defendant Nissin Foods (U.S.A.) Co. Inc. ("Nissin"), is a California Corporation with principal place of business at 2001 West Rosecrans Ave., Gardena, California 90249.  Nissin manufactures and distributes instant noodle food products.  Nissin is a subsidiary of Nissin Foods Holdings Co., Ltd., a Japanese company.

## III.    Jurisdiction and Venue.

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

6.      The Court has personal jurisdiction over Defendant because Defendant is a California corporation with principal place of business in California.

7.      Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant's principal place of business is in this district.

## IV.    Facts.

### A.    Free glutamates.

8.      Glutamic acid and its salts are known as "free glutamates."  Free glutamates provide an "umami" or savory taste to food.  Umami taste induces salivary secretion, meaning that it makes your mouth water.  This can improve the taste of food.

9.      Free glutamates—and ingredients containing free glutamates—are frequently added to food to improve flavor.  Though widespread, this use of free glutamates and ingredients containing them as flavor enhancers is controversial.  Many consumers and researchers believe that consumption of free glutamates can lead to adverse health effect such as headaches, increased blood pressure, obesity, and psychiatric illness. [1, 2, 3]

10.      In addition, many consumers report sensitivity and allergies to foods containing free glutamates.  These consumers report negative reactions from eating foods that contain free glutamates including breathing difficulties, chest pain, facial flushing, headaches, numbness or burning pain in the mouth, increased heart rates, sweating, and swelling of the face. [4,5]

---

[1] https://www.webmd.com/diet/high-glutamate-foods#1
[2] https://www.medicalnewstoday.com/articles/322303
[3] FDA and Monosodium Glutamate (MSG), FDA Backgrounder, pp. 3-4 (August 31, 1995).
[4] https://www.medicalnewstoday.com/articles/322303
[5] https://www.healthline.com/health/allergies/msg

11.    For all these reasons, many consumers—including Plaintiff—seek to avoid foods that contain free glutamates.

**B.    MSG.**

12.    The term "MSG" technically refers to Monosodium Glutamate.  Monosodium Glutamate is the sodium salt form of glutamate, which is the most popular form of free glutamate added to prepared foods.

13.    As the FDA has repeatedly recognized, "while technically MSG is only one of several forms of free glutamate used in foods, consumers frequently use the term MSG to mean all free glutamate." [6]

14.    In addition, the free glutamate in MSG is chemically indistinguishable from "free standing" free glutamate or free glutamate contained in other glutamic acid salts.  People ultimately metabolize these sources of free glutamate in the same way. [7]

15.    Accordingly, to consumers, MSG means free glutamate.  And the only reason a consumer might want to avoid consuming foods that contain MSG is if they want to avoid consuming free glutamates.

16.    Because many consumers wish to avoid foods that contain free glutamates, many prepared foods—including the foods sold by Defendant—are prominently labelled "No MSG" and/or "No added MSG."  In addition, many manufacturers of prepared foods—including Defendant—prominently advertise that their foods do not contain MSG or added MSG.

---

[6] FDA and Monosodium Glutamate (MSG), FDA Backgrounder, pp. 3-4 (August 31, 1995); Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996) (noting that consumers "use the term 'MSG' to mean all forms of free glutamate that are added to food"—not just the sodium salt form).
[7] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-msg

**C.    Labelling a food that contains free glutamates "No MSG" or "No added MSG" is false and misleading and unlawful.**

17.    Because consumers use the term "MSG" to refer to free glutamates generally (as opposed to the sodium salt form of free glutamate specifically), a reasonable consumer would understand a claim of "No MSG" or "No added MSG" to mean that a food product labelled or described in this manner does not contain free glutamates—in sodium salt form or otherwise.

18.    And indeed, as explained above, the glutamate in MSG is chemically indistinguishable from "free standing" free glutamate or free glutamate contained in other glutamic acid salts. [8]

19.    In addition, a reasonable consumer would understand the statement "No MSG" and "No added MSG" about a food product to mean that the product 1) does not contain any free glutamates and also 2) does not contain any ingredients that themselves contain free glutamates. This is because if an ingredient of a product contains free glutamates, then the product itself contains free glutamates, too.  As a result, it is false and misleading to describe a product that either 1) contains free glutamates or 2) contains ingredients that contain free glutamates as having "No MSG" or "No added MSG."

20.    The FDA has repeatedly recognized this common-sense proposition.

21.    For example, an FDA Backgrounder on MSG noted:

> While technically MSG is only one of several forms of free glutamate used in foods, consumers frequently use the term MSG to mean all free glutamate. For this reason, FDA considers foods whose labels say "No MSG" or "No Added MSG" to be misleading if the food contains ingredients that are sources of free glutamates, such as hydrolyzed protein.

22.    Likewise, in a notice of proposed rulemaking published in the Federal Register, the FDA explained:

---

[8] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-msg

"FDA tentatively finds that consumers are likely to perceive a 'No MSG' or 'No added MSG' claim on a label as indicating the absence of all forms of free glutamate in the food.  Such claims encourage consumers wishing to avoid free glutamate to purchase a food by representing the food as free of MSG.  … [W]hile technically such foods bearing a claim about the absence of MSG do not contain the ingredient monosodium glutamate, they frequently contain levels of free glutamate that cause claims like 'No MSG' and 'No added MSG' to be misleading." [9]

"A related problem is the use of claims such as 'No MSG' and 'No added MSG' on foods that contain substantial amounts of naturally occurring free glutamate, such as tomato paste and certain cheeses.  Although such foods do not contain MSG itself, they contain ingredients with concentrations of free glutamate that function as flavor enhancers like MSG.  Because of their free glutamate content, these foods are as likely to cause or contribute to an MSG symptom complex reaction as a food that contains a comparable amount of MSG.  A claim such as 'No MSG' is misleading because it implies that the food may be consumed by glutamate-intolerant consumers without risk of a reaction." [10]

23.     The FDA concluded:

"A food that bears a false or misleading claim about the absence of MSG is misbranded under section 403(a) of the act.  FDA has repeatedly advised consumers and industry that it considers such claims as 'No MSG' and 'No added MSG' to be misleading when they are used on the labels of foods made with ingredients that contain substantial levels of free glutamate." [11]

---

[9] Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996)
[10] *Id*.
[11] *Id*.

24.    Moreover, on November 19, 2012, the FDA expressly clarified on its website that, under section 403(a) of the Food and Drug Administration Act, foods containing any form of free glutamate—and not just monosodium glutamate specifically—"cannot claim 'No MSG' or 'No added MSG' on their packaging" [12]:

> **How can I know if there is MSG in my food?**
>
> FDA requires that foods containing added MSG list it in the ingredient panel on the packaging as monosodium glutamate. However, MSG occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses. While FDA requires that these products be listed on the ingredient panel, the agency does not require the label to also specify that they naturally contain MSG. However, foods with any ingredient that naturally contains MSG cannot claim "No MSG" or "No added MSG" on their packaging. MSG also cannot be listed as "spices and flavoring."

25.    Thus, not only is claiming "No MSG" or "No MSG added" on a food product containing free glutamates false and misleading—it is expressly prohibited by the FD&C Act. [13]

**D.    Defendant makes, markets, and sells products that are labelled "No added MSG," and advertises that those products have "No added MSG."**

26.    Many prepared foods that do not contain any free glutamates are labelled "No MSG" and "No added MSG."  The reason many prepared foods are labelled this way is because, as explained above, whether or not a product contains free glutamates matters to consumers. Accordingly, many consumers seek out—and are willing to pay more for—products that do not contain free glutamates such as MSG.  And many consumers avoid—or are willing to pay less for—foods that contain free glutamates such as MSG.

---

[12] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-msg

[13] The FDA's interpretation of its regulations—even an informal interpretation in a Q&A on FDA's website—is binding.  *Campen v. Frito-Lay N. Am., Inc., No.* 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at *28 (N.D. Cal. Apr. 1, 2013).

27.    Defendant makes and sells packaged instant noodles including "Cup Noodles" branded noodles, "Hot & Spicy" branded noodles, "Chow Mein" branded noodles, and "Top Ramen" branded noodles.  Defendant prominently labels these noodles "NO ADDED MSG." Defendant also advertises that these noodles have "no added MSG" on its website and product literature.  This complaint refers to each of Defendant's products labelled or advertised as having "NO MSG ADDED" as the "No MSG Products."

28.    Several illustrative examples of the No MSG Products are shown below:







29.     Each of the No MSG Products is prominently labelled "NO ADDED MSG."  The NO ADDED MSG label is in capital letters and in large, bold font.  It is placed on the front (and in some cases, in the front as well as on top) of the product.  And it is placed within a large, noticeable, light blue circle for emphasis.  This coloring is designed to, and actually does, call attention to the "NO ADDED MSG" label.  Because none of Defendant's products otherwise include light blue on their packaging, the light blue coloring—and the large NO ADDED MSG label within it—stands out.

30.     In addition to attaching "NO ADDED MSG" labels to the front (and sometimes to the top) of the No MSG Products, Defendant also advertise the fact that its products supposedly do not contain added MSG on its website and in other promotional materials.

31.    For example, on the product website for its Cup Noodles branded noodles, Defendant describes Cup Noodles as "The original instant ramen in a cup <u>with no added MSG</u>."[14]:

 ## CUP NOODLES. THE ONE. THE ONLY. THE ORIGINAL. 

For 50 years, Nissin Cup Noodles® has been warming bellies and putting smiles on faces. The original instant ramen in a cup with no added MSG. Your favorite quick, easy and portable meal just keeps getting better. To celebrate our 50th anniversary, we'll be having contests, surprise giveaways and massive sweepstakes throughout the year.

32.    As a second example, on its Top Ramen product website, Defendant claims that Top Ramen has "no added MSG."[15]:

 ## CELEBRATING 50 YEARS OF THE ORIGINAL. 

Delicious as is or tossed with your favorite ingredients, Top Ramen® is always a simple pleasure. With reduced sodium content and no added MSG, the great taste you love has been stripped down to its essential noodle goodness. Even vegetarians can enjoy our Soy Sauce and Chili flavors with their favorite toppings.

---

[14] https://nissinfoods.com/products/cup-noodles
[15] https://nissinfoods.com/products/top-ramen-noodles

33.    Indeed, Defendant even mentions the fact that its No MSG products supposedly have "no added MSG" in Google search results summaries for their product pages.  For example:



https://nissinfoods.com › Products Page    ⋮

Cup Noodles – The original ramen in a cup - Nissin Foods

For 50 years, **Nissin Cup Noodles**® has been warming bellies and putting smiles on faces. The original instant ramen in a cup with no added MSG.

34.    Based on these representations, a reasonable consumer would understand that Defendant's No MSG products do not contain any free glutamates, including specifically monosodium glutamate.  A reasonable consumer would also understand that Defendant's No MSG products do not contain any ingredients that themselves contain free glutamates such as MSG.

35.    Defendant labelled its products "NO ADDED MSG," and made similar claims about its products on its website and product literature, because it intended for people to rely on the labels and claims and to believe that the No MSG Products do not contain free glutamates, nor do they contain ingredients that themselves contain free glutamates.

36.    The No MSG Products also include—in small lettering designed to blend into the background—the statement "contains small amounts of naturally occurring glutamates."  This is shown in the magnified depiction below:



10

37.    As explained below, a reasonable consumer would not notice this qualifying statement.  Moreover, even as qualified, a reasonable consumer would understand the "NO ADDED MSG" label to mean that no MSG or free glutamates were added to the product.

**E.    Defendant's claims and labels are false, misleading, and unlawful because in truth, ingredients containing free glutamates, including specifically MSG, are added to Defendant's products.**

38.    The truth, however, is that the No MSG Products do contain ingredients that contain free glutamates—including specifically monosodium glutamate.  And indeed, Defendant adds these ingredients to the No MSG Products specifically for the purpose of giving the products an "umami" taste.  As a result, Defendant's "No ADDED MSG" labels and representations are false and misleading.  Moreover, they violate the FD&C Act.

39.    Indeed, No MSG Products contain added free glutamates—including several of the very same ingredients that the FDA guidance specifically says cannot be included in foods labelled "NO MSG" or "NO MSG ADDED".

40.     For example, here is a listing of the ingredients of Defendant's Chicken Top Ramen product (pictured above with a large "NO ADDED MSG" label):

## NUTRITIONAL FACTS

**Serving Size** 1 package (85g)
**Servings Per Container** 1

| Amount Per Serving | Per 1/2 Package | Per Serving |
|---|---|---|
| Calories 190, 380 | | % Daily Value* |
| **Total Fat** 7g**, 14g*** | 9% | 18% |
| Saturated Fat 3g, 7g | 16% | 33% |
| Trans Fat 0g, 0g | | |
| **Cholesterol** 0mg, 0mg | 0% | 0% |
| **Sodium** 790mg, 1590mg | 34% | 69% |
| **Total Carbohydrate** 26g, 53g | 10% | 19% |
| Dietary Fiber <1g, 2g | 3% | 6% |
| Total Sugars 0g, 0g | | |
| Added Sugars 0g, 0g | 0% | 0% |
| **Protein** 5g, 9g | | |
| Vitamin D 0mcg, 0mcg | 0% | 0% |
| Calcium 0mg, 0mg | 0% | 0% |
| Iron 1.7mg, 3.4mg | 10% | 20% |
| Potassium 90mg, 190mg | 2% | 4% |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.
** Amount Per 1/2 Package
*** Amount Per Serving

## INGREDIENTS

ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), PALM OIL, SALT, CONTAINS LESS THAN 2% OF AUTOLYZED YEAST EXTRACT, CITRIC ACID, DISODIUM GUANYLATE, DISODIUM INOSINATE, DISODIUM SUCCINATE, DRIED LEEK FLAKE, EGG WHITE, GARLIC POWDER, HYDROLYZED CORN PROTEIN, HYDROLYZED SOY PROTEIN, LACTOSE, MALTODEXTRIN, NATURAL AND ARTIFICIAL FLAVOR, ONION POWDER, POTASSIUM CARBONATE, POTASSIUM CHLORIDE, POWDERED CHICKEN, RENDERED CHICKEN FAT, SILICON DIOXIDE, SODIUM ALGINATE, SODIUM CARBONATE, SODIUM TRIPLYPHOSPHATE, SOYBEAN, SPICE AND COLOR, SUCCINIC ACID, SUGAR, TBHQ (PRESERVATIVE), WHEAT.

CONTAINS WHEAT, SOYBEAN, EGG, AND MILK.

MANUFACTURED IN A FACILITY THAT ALSO PROCESSES PEANUT, TREE NUTS, SESAME, CRUSTACEAN SHELLFISH, AND FISH PRODUCTS.

CONTAINS BIOENGINEERED FOOD INGREDIENTS.

41.     Several of the listed ingredients are substantial sources of free glutamates— including specifically monosodium glutamate itself.  For example, "AUTOLYZED YEAST

EXTRACT" is a substantial source of free glutamates including monosodium glutamate. [16] Other ingredients that include free glutamates include "HYDROLYZED CORN PROTEIN," "HYDROLYZED SOY PROTEIN," and "MALTODEXTRIN."

42.     Indeed, several of the ingredients found in Defendant's No MSG Products are examples that the FDA provides on its website of ingredients that naturally contain MSG and thus cannot be included in foods labelled "No MSG" or No added MSG." [17]

43.     Moreover, these ingredients are not ingredients that happen to be, or are necessarily a part of, the No MSG Products (such as flour, which is a basic, and necessary, ingredient in noodles).  Rather, Defendants add these ingredients to their products specifically because these ingredients include a substantial amount of free glutamates and, as a result, give the No MSG Products an "umami" taste.

44.     Thus, labelling the No MSG Products "NO ADDED MSG," and making similar claims about such products on Defendant's website and other promotional materials, is misleading and false, because those products actually do contain free glutamates—including specifically monosodium glutamate.

45.     In addition, such labels and claims violate the FD&C Act which, as interpreted by the FDA, specifically prohibits claiming "NO ADDED MSG" on food products containing ingredients that naturally contain free glutamates, including specifically the ingredients found in Defendant's No MSG products.

---

[16] See, e.g, https://www.livestrong.com/article/71755-autolyzed-yeast-extract/ (noting that autolyzed yeast extract naturally monosodium glutamate, i.e., MSG); https://culinarylore.com/ingredients:what-is-autolyzed-yeast-extract-in-foods/;

[17] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-msg

**F.      Defendant's "NO ADDED MSG" representations are misleading to reasonable consumers.**

46.      Section 403 of the FD&C Act prohibits food labelling that is "false or misleading in any particular."  21 U.S. Code § 343; see 21 U.S. Code §331 (prohibiting misbranding food and the introduction in interstate commerce of misbranded food).  As the FDA has expressly stated in interpreting the Act, it is misleading to label a product "NO MSG" or "NO ADDED MSG" if that product contains free glutamates or if that product contains ingredients that contain free glutamates. [18]

47.      Based on the fact that Defendant labelled the No MSG Products "NO MSG ADDED," a reasonable consumer would expect that those products do not contain free glutamates including specifically monosodium glutamate.

48.      A reasonable consumer would also expect that those products do not contain any ingredients that themselves contain free glutamates.  Indeed, the FDA expressly prohibits food manufacturers from claiming that foods containing free glutamates or ingredients that themselves contain free glutamates have "NO ADDED MSG."

49.      Defendant's products state—in a very small font—"contains small amounts of naturally occurring glutamates."  This qualifying statement does not make Defendant's "NO ADDED MSG" claims legal.  Nor does it make them truthful or not misleading.

50.      <u>Unlawful</u>.  This qualifying statement is an illegal—and ineffective—attempt to side-step FDA rules.  The FDA rules do not permit companies to state "No Added MSG" on a

---

[18] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-msg; *see Campen v. Frito-Lay N. Am., Inc*., No. 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at *25-29 (N.D. Cal. Apr. 1, 2013) ("The FDA made clear that even though MSG and ingredients that are sources of MSG must be labeled by their proper names, a manufacturer cannot say that a product containing an ingredient that is a source of MSG, like torula yeast, therefore contains 'No MSG.'").

product that contains MSG or free glutamates, so long as the statement is qualified by a disclosure that glutamates are naturally present. Rather, the FDA's rules are clear: "foods with any ingredient that naturally contains MSG cannot claim 'No MSG' or 'No added MSG' on their packaging"—period. The addition of qualifying language does not change this.

51.    <u>False and misleading</u>. Even as qualified, the "NO ADDED MSG" label is false and misleading, for two separate reasons.

52.    First, a reasonable consumer would not notice the statement that the No MSG Products "contain[] small amounts of naturally occurring glutamates." And indeed, Defendant designed the statement specifically not to be noticed by reasonable consumers.

53.    The qualifying statements are off to the side and in a much smaller font than the NO ADDED MSG label. (The font size of the "NO ADDED MSG" label is at least 3 times larger than the font of the qualifying statement). In addition—unlike the "NO ADDED MSG" label, which is set out on a different colored label that emphasizes its presence—the qualifying statements are colored in a way to blend into the background. As a result, a reasonable consumer would focus on the "NO ADDED MSG" label, and not notice the qualifying statements. And this is exactly what happened to Plaintiff, who saw and relied on the large "NO ADDED MSG" label but did not even notice, much less read, the additional qualifying statements. Moreover, Defendant's website and other product literature—which also claims that the products have "no added MSG"—are not in any way qualified.

54.    Second, if a consumer did happen to notice the "contains small amounts of naturally occurring glutamates" statement, that would not render the product packaging as a whole true or not misleading. When coupled with the prominent statement "NO ADDED MSG," a reasonable consumer would interpret this statement to convey that the "naturally occurring

glutamates" are not "MSG," i.e., the very free glutamates that concern consumers and the FDA, but rather are glutamates that do not have the same problems as MSG. [19]  Indeed, the FDA adopted findings by the Federation of American Societies for Experimental Biology ("FASEB"), which was retained by FDA to perform this study, that naturally occurring free glutamates cause adverse effects just like manufactured free glutamates:

> "Free glutamate can exist in two possible stereoisomeric forms: Dglutamate and L-glutamate. L-glutamate is the predominant natural form and the only form with flavor-enhancing activity. FASEB concluded that MSG symptom complex reactions are related to L-glutamate exposure and that the chemical nature of L-glutamate is the same regardless of the source, i.e., whether manufactured or naturally occurring in the food. Thus, FASEB found no evidence to support the contention that adverse reactions occur with manufactured but not naturally occurring glutamate." [20]

55.     Moreover, a reasonable consumer would interpret this statement to mean that those non-MSG glutamates happen to be in ingredients that are necessary to make the basic product (and not optional to enhance taste).  But in fact, Defendant adds ingredients containing MSG and other free glutamates specifically for the purpose of giving the No MSG Products an "umami" taste.

56.     This interpretation is reasonable because it makes the "NO ADDED MSG" claim consistent with the qualifying language, as opposed to contradictory and confusing.  A reasonable consumer would expect qualifying language to be consistent with, and not directly contrary to, the statement that the qualifying statement qualifies.  Thus, a reasonable consumer would interpret qualifying language subject to multiple interpretations in a manner consistent with the language it qualifies.

---

[19] For example, bound glutamates (another kind of glutamate that is different from MSG and which does not have the same reported health effects as free glutamates).

[20] Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996)

57.     Third, even a statement that the No MSG Products contain added ingredients that themselves contain MSG could not render the "NO ADDED MSG" representation truthful because such a statement would not qualify the "NO ADDED MSG" label but instead would directly conflict with it.  A reasonable consumer would not expect a product to "qualify" a prominently displayed false statement with a statement in tiny print that directly contradicts it.  Nor would such a qualification render the false statement truthful.

58.     Whether a product contains free glutamates or MSG is material to a reasonable consumer.

59.     As explained above, many consumers and researchers believe that consumption of free glutamates can lead to adverse health effects.  In addition, many consumers report sensitivity and allergies to foods containing free glutamates.  Accordingly, many consumers—including Plaintiff—seek to avoid foods that contain free glutamates such as MSG.

60.     Defendant's false statements increased the demand for the No MSG Products.  As a result, Defendant was able to charge more for its No MSG Products than it would have been able to had the packaging and ads been truthful.  Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for its No MSG Products.  And indeed, Defendant's No MSG Products cost more than comparable products that are not labelled "NO ADDED MSG."  As purchasers of the No MSG Products, Plaintiff and each member of the proposed class paid this price premium and, as a result, sustained an economic injury as a result of Defendant's false statements and material omissions.

**G.      Plaintiff was misled by Defendant's misrepresentations.**

61.      Plaintiff has purchased Defendant's Cup Noodles instant noodles, most recently in early 2022.  A picture of a Cup Noodles purchased by Plaintiff is shown below:



62.      The package was prominently labelled "NO ADDED MSG".  Plaintiff read and relied on the statement when purchasing the product.  Plaintiff did not notice the qualifying language "contains small amounts of naturally occurring glutamates" when she purchased the product.

63.      Plaintiff tries to avoid eating foods that include MSG or free glutamates.  Plaintiff would not have purchased the product at the price she paid if she had known that the products actually do contain free glutamates such as MSG.

64.      Plaintiff would purchase the product again if it actually did not contain any free glutamates or MSG (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

## V.    Class Action Allegations.

65.    Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a No MSG Product in the United States during the applicable statute of limitations (the "Nationwide Class").

66.    For other claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in the identified states (the "Consumer Protection Subclass").

67.    For certain claims, Plaintiff also brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased No MSG Products in New York (the "New York Subclass").

68.    The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity*

69.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of No MSG Products, there are millions of proposed class members.

*Commonality*

70.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- whether the No MSG Products contain free glutamates such as MSG

- whether Defendant's labelling of the No MSG Products as "NO ADDED MSG" violates the FD&C Act

- whether Defendant's labelling of the No MSG Products as "NO ADDED MSG" is misleading to a reasonable consumer

- whether Defendant violated state consumer production laws

- whether Defendant committed a breach of express warranty

- damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

71.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased No MSG Products.

*Predominance and Superiority*

72.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

73.    Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be

determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant's "NO ADDED MSG" labeling is illegal, false and misleading.

74.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**Count I: Violations of State Consumer Protection Acts**
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

75.     Plaintiff incorporates each and every factual allegation set forth above.

76.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |

| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
|----------|---------------------------------------------------|
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

77.    Each of these statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sale of goods or services to consumers.  Defendant's misleading packaging and ads violate each statute's prohibitions.

78.    The sale of the No MSG Products is the sale of goods to consumers. Hundreds of thousands (or potentially millions) of consumers purchase these products.

79.     As alleged in detail above, Defendant's misrepresentations were misleading to Plaintiff and to reasonable consumers.  As the manufacturer, Defendant was aware that the No MSG Products contain free glutamates/MSG.  Accordingly, Defendant was aware that its packaging and ads were misleading to reasonable consumers.

80.     For applicable statutes, Plaintiff is contemporaneously providing written notice and a demand for correction (together with notice of certain other violations alleged in this Complaint).  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

81.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

### Count II: Violation of New York Gen. Bus. Law § 349
### (on behalf of Plaintiff and the New York Subclass)

82.     Plaintiff incorporates each and every factual allegation set forth above.

83.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

84.     Plaintiff and the Subclass purchased No MSG Products in New York.

85.     Defendant's false and misleading "NO ADDED MSG" claims are consumer-oriented.

86.     Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase these products. These transactions recur every day.

87.     Defendant's "NO ADDED MSG" misrepresentations were material.  As alleged in detail above, these misrepresentations were important to consumers and affected their choice to purchase No MSG Products.  And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers.

88.     Defendant's misrepresentations were willful and knowing.  Because Defendant makes and sells the No MSG Products, Defendant knows what ingredients they contain and knows that those ingredients include free glutamates/MSG.  As a result, Defendant knows that the No MSG Products contain glutamates/MSG.  Furthermore, Defendant controls its labeling, knowingly put on the "NO ADDED MSG" representations, and knows the plain meaning of "NO ADDED MSG."

89.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (instant noodles that do not contain free glutamates or MSG) and they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations.

90.     Plaintiff and the Subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief.  *See* N.Y. Gen. Bus. Law § 349 (h).

### Count III: Violation of New York Gen. Bus. Law § 350
### (on behalf of Plaintiff and the New York Subclass)

91.     Plaintiff incorporates each and every factual allegation set forth above.

92.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

93.     Plaintiff and the Subclass purchased No MSG Products in New York.

94.     Defendant's false and misleading "NO ADDED MSG" claims impacted consumers at large.  Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase No MSG Products.  These transactions recur every day.

95.     Defendant's "NO ADDED MSG" claims were deceptive and misleading in a material way.  As alleged in detail above, these "NO ADDED MSG" misrepresentations were important to consumers and affected their choice to purchase No MSG Products.  And these misrepresentations were likely to mislead reasonable consumers.

96.     Plaintiff and the Subclass saw and relied on Defendant's "NO ADDED MSG" misrepresentations.

97.     Defendant's misrepresentations were willful and knowing.  Because Defendant makes and sells the No MSG Products, Defendant knows what ingredients they contain and knows that those ingredients include free glutamates/MSG.  As a result, Defendant knows that the No MSG Products contain glutamates/MSG.  Furthermore, Defendant controls its labeling, knowingly put on the "NO ADDED MSG" representations, and knows the plain meaning of "NO ADDED MSG."

98.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (instant noodles that do not contain free glutamates or MSG) and they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations.

99.     Plaintiff and the Subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 350-e (3).

### Count IV: Breach of Express Warranty
### (on behalf of Plaintiff and a Nationwide Class)

100.    Plaintiff incorporates by reference each and every factual allegation set forth above.

101.    Plaintiff brings this count individually and for the Nationwide Class.

102.    Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the NO MSG Products, issued material, written warranties by representing that the products had "NO ADDED MSG."  This was an affirmation of fact about the products (i.e., a description of the ingredients) and a promise relating to the goods.

103.    This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

104.    In fact, the No MSG Products do not conform to the above-referenced representation because, as alleged in detail above, they contain free glutamates/MSG.  Thus, the warranty was breached.

105.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on January 18, 2022.

106.    Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

## Count V: Breach of the Magnuson-Moss Warranty Act
### (on behalf of Plaintiff and the Nationwide Class)

107.    Plaintiff incorporates by reference each and every factual allegation set forth above.

108.    Plaintiff brings this count individually and for the Nationwide Class.

109.    Defendant supplied No MSG Products to consumers and the No MSG Products are consumer products.

110.    Defendant issued material, written warranties by representing that the products had "NO ADDED MSG." This was an affirmation of fact about the material in the products (i.e., a description of the ingredients) and a promise relating to the goods.

111.    Defendant's "NO MSG ADDED" representations relate to the nature of the ingredients and promises that such ingredients are MSG and glutamate-free.

112.    This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

113.    In fact, the No MSG Products do not conform to the above-referenced representation because, as alleged in detail above, they contain ingredients that contain free glutamates/MSG. Thus, the warranty was breached.

114.    Plaintiff provided Defendant with notice of this breach of warranty (including her intent to seek classwide relief), by mailing a notice letter to Defendant's headquarters, on January 18, 2022.

115.    Plaintiff and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they

paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

**Jury Demand.**

116.    Plaintiff demands a jury trial on all issues so triable.

**Prayer for Relief.**

117.    Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages (including under N. Y. Gen. Bus. Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

Dated: January 21, 2022

Respectfully submitted,

By: */s/ Simon Franzini*

Simon Franzini (Cal. Bar No. 287631*)*
(pro hac vice application forthcoming)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912*)*
(pro hac vice application forthcoming)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Zack Broslavsky (Cal. Bar No. 241736)
(pro hac vice application forthcoming)
zbroslavsky@bwcounsel.com
BROSLAVSKY & WEINMAN, LLP
1500 Rosecrans. Ave, Suite 500
Manhattan Beach, CA 90266
Telephone: (310) 575-2550
Facsimile: (310) 464-3550

*Counsel for Plaintiff and the Proposed Class*