**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Stephanie Henry, individually and on behalf
of all others similarly situated,

*Plaintiff*,

vs.

Nissin Foods (U.S.A.) Co. Inc.

*Defendant*

Case No. 1:22-cv-00431-LDH-PK

JURY TRIAL DEMANDED

Date of Service: May 24, 2022

**Plaintiff's Memorandum of Law in Opposition**
**to Defendant's Motion to Dismiss**

## Table of Contents

I.      Issue presented. ................................................................................................... 1

II.     Statement of Facts. .............................................................................................. 1

        A.      Many consumers do not want to eat MSG. ............................................. 1

        B.      The FDA concludes that it is misleading to claim "No Added MSG" on the label of foods which contain autolyzed yeast and hydrolyzed proteins, and expressly prohibits this practice. ...................................................... 3

        C.      Defendant's ramen labels claim "No Added MSG," even though they contain autolyzed yeast and hydrolyzed proteins. .................................. 5

III.    Ms. Henry plausibly alleges that a reasonable consumer would be misled. ...................... 6

        A.      Ms. Henry plausibly alleges that Defendant's "No Added MSG" claim is misleading to reasonable consumers. ...................................................... 6

        B.      Defendant cannot show that Ms. Henry's allegations are "patently implausible" and "border on fantasy," especially because the FDA reached the same conclusion after carefully analyzing the issue. ............................ 7

        C.      The supposed "disclaimer" about "naturally occurring glutamate" does not render Defendant's labels truthful, much less do so as a matter of law .............. 13

                1.      A reasonable consumer would not notice the disclaimer, so the disclaimer cannot possibly cure any deception. ......................................... 14

                2.      The "NO ADDED MSG" representation is deceptive even as qualified. ........................................................................................... 16

        D.      The ingredients list on the back panel does cure the deception caused by the prominent "NO ADDED MSG" label, both under controlling law and as a factual matter. ................................................................................ 19

IV.     Conclusion. ......................................................................................................... 19

## Table of Authorities

**Cases**

*Ackerman v. Coca-Cola Co.*,
  2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ........................................................ 12

*Acquard v. Big Heart Pet Brands*,
  2020 U.S. Dist. LEXIS 224712 (W.D.N.Y. Nov. 30, 2020) .................................................. 18

*Atik v. Welch Foods, Inc.*,
  2016 U.S. Dist. LEXIS 106497 (E.D.N.Y. Aug. 5, 2016) ...................................................... 12

*Campbell v. Freshbev LLC*,
  322 F. Supp. 3d 330 (E.D.N.Y. 2018) .................................................................................... 12

*Cooper v. Anheuser-Busch, LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021) ....................................................................................... 8

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) .................................................................................... 11

*Duran v. Henkel of Am., Inc.*,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020) ..................................................................................... 8

*Garadi v. Mars Wrigley Confectionery Us*,
  2021 U.S. Dist. LEXIS 128814 (E.D.N.Y. July 6, 2021) ...................................................... 11

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F. Supp. 3d 453 (S.D.N.Y. 2020) ................................................................................. 8, 10

*Hughes v. Ester C Co.*,
  930 F. Supp. 2d 439 (E.D.N.Y. 2013) .................................................................................... 16

*In re Frito-Lay N. Am., Inc.*,
  2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) .................................... 8, 15, 16, 19

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ........................................................................ 15, 16, 18

*Lemberg Law, LLC v. Egeneration Mktg., Inc.*,
   2020 U.S. Dist. LEXIS 94879 (D. Conn. May 29, 2020) ................................................ 14, 16

*Madenlian v. Flax USA Inc.*,
  2014 U.S. Dist. LEXIS 181473 (C.D. Cal. Mar. 31, 2014) .............................................. 14, 16

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018) .......................................................................................... 14, 18, 19

*Pichardo v. Only What You Need, Inc.*,
  2020 U.S. Dist. LEXIS 199791 (S.D.N.Y. Oct. 27, 2020) .................................................... 11

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) ..................................................................................... 8

*Sitt v. Nature's Bounty, Inc.*,
  2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sep. 26, 2016) ..................................................... 14

*Steele v. Wegmans Food Mkts.*,
   472 F. Supp. 3d 47 (S.D.N.Y. 2020) ...................................................................... 11

*Stoltz v. Fage Dairy Processing Indus.*,
   2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015).......................... 15, 16, 19

*Videtto v. Kellogg USA*,
   2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20, 2009) ........................................ 8

*Warren v. Whole Foods Mkt. Grp., Inc.*,
   2021 U.S. Dist. LEXIS 231930 (E.D.N.Y. Dec. 3, 2021) ................................. 11, 12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................................................. 8

**Other Authorities**

Advance Notice of Proposed Rulemaking: Declaration of Free Glutamate In Food,
   61 Fed. Reg. 48102 (Sept. 12, 1996) .............................................................. passim

Questions and Answers on Monosodium glutamate (MSG), U.S. Food & Drug Admin. (Nov. 19,
   2012) ................................................................................................................ 2, 3, 5

Withdrawal of Certain Proposed Rules and Other Proposed Actions,
   69 Fed. Reg. 68831 (Nov. 26, 2004) ...................................................................... 5

## I.     Issue presented.

Defendant claims that its ramen have "NO ADDED MSG," even though Defendant adds ingredients to its ramen that have high levels of free glutamate.  Ms. Henry alleges that these claims are deceptive because, to reasonable consumers, a "NO ADDED MSG" label means that no free glutamate has been added, in any form.  The FDA has carefully studied how consumers understand "NO ADDED MSG" labels, and reached this same conclusion.  Has Ms. Henry plausibly alleged that Defendant's "NO ADDED MSG" claims are deceptive to reasonable consumers?

## II.    Statement of Facts.

### A.     Many consumers do not want to eat MSG.

Glutamate is an amino acid.  There are generally two types.  "Bound" glutamate is part of a larger protein and is found in meat.  It is relatively tasteless.  *See* Advance Notice of Proposed Rulemaking: Declaration of Free Glutamate In Food, 61 Fed. Reg. 48102, 48103 (Sept. 12, 1996) ("Notice"); Complaint ¶54 n.19.

"Free" glutamate, on the other hand, is not incorporated into a protein.  Companies often add free glutamate to processed foods because it enhances flavor.  *See* Complaint ¶¶8-11; Notice at 48103.

Although free glutamate is considered safe for human consumption, its use as a food additive is controversial.  Many consumers report having adverse reactions to free glutamate or believe that it can cause adverse health effects.  This includes headaches, increased blood pressure, obesity, and psychiatric illness.  *Id*.  "Bound" glutamate, instead, does not have the same effect on the body as free glutamate because it remains bound to the protein of which it is a part.  Consumers do not report adverse reactions to bound glutamate.  *See* Complaint ¶54 n.19; Notice at 48103.

1

Free glutamate is added to food in several ways.  Historically, by far the most common way was to add it in its sodium-salt form, monosodium glutamate.  This form of free glutamate is created through a manufacturing process and is a white, crystalline powdered substance that looks like salt.  Because this form of free glutamate is the most popular, the term "MSG"—technically an abbreviation for monosodium glutamate—is used to refer to all forms of free glutamate.  *See* Complaint ¶15; Notice at 48108.

More recently, another popular way has emerged to add free glutamate to food: adding ingredients such as autolyzed yeast extract or hydrolyzed protein, which contain high levels of free glutamate.  *See* Complaint ¶¶54 n.19; Notice at 48103.

Regardless of how it is added, free glutamate breaks down into its component parts as soon as it is consumed.  As a result, free glutamate affects the body the same way regardless of its source—whether it comes from monosodium glutamate or from some other ingredient (like yeast extract) containing free glutamate.  Someone who is sensitive to monosodium glutamate will also be sensitive to other free glutamate.  There is nothing special about monosodium glutamate in particular.  *See* Complaint ¶¶8-11, 18; Notice at 48103 (free glutamate is "essentially equivalent" to MSG"); Ex. 1 (Food & Drug Administration, *Questions and Answers on Monosodium Glutamate (MSG)*) [1]("FDA Q&A") (free glutamate in other foods is "chemically indistinguishable" from MSG).

Scientific research has confirmed that naturally-occurring free glutamate raises identical health concerns as manufactured free glutamate. The Federation of American Societies for Experimental Biology specifically studied whether people reacted differently to "manufactured" free glutamate in the sodium salt form or the "naturally occurring" glutamate in other ingredients

---

[1] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-msg

such as yeast extract, and concluded that "MSG symptom complex reactions" are "the same regardless of the source, i.e., whether manufactured or naturally occurring in the food." Complaint ¶54; *id.* ("naturally occurring free glutamates cause adverse effects just like manufactured free glutamates"). The Federation "found no evidence to support the contention that adverse reactions occur with manufactured but not naturally occurring glutamate."

Thus, in short, a consumer who wants to avoid manufactured monosodium glutamate will also want to avoid other free glutamate such as the free glutamate in autolyzed yeast. *See* Complaint ¶¶8-11, 18; Notice at 48103; FDA Q&A.

### B. The FDA concludes that it is misleading to claim "No Added MSG" on the label of foods which contain autolyzed yeast and hydrolyzed proteins, and expressly prohibits this practice.

In the 1990s, the FDA issued a Notice of Proposed Rulemaking regarding labeling of foods containing free glutamate. *See* Notice. In that Notice, the FDA addressed the very practice Plaintiff challenges in this case—the use of a "No Added MSG" label on foods containing ingredients with high levels of free glutamate, such as autolyzed yeast. *Id.* at 48108; *see* Complaint ¶22. And—based on a thorough and careful investigation—the FDA concluded that such a claim is misleading to reasonable consumers. *Id.*

The Notice explains that, in response to consumer concerns about the use of free glutamate in food, some food manufacturers began to "make label claims such as 'No MSG' or 'No added MSG.'" To justify such claims, manufacturers "reformulate[d] their product" to remove crystallized monosodium glutamate powder and replaced it "with ingredients like hydrolyzed proteins, autolyzed yeast extracts, or other flavor-enhancing ingredients that contain substantial amounts of free glutamate." Notice at 48108; *see* Complaint ¶22.

The problem was, food makers were claiming "No added MSG" even though all they had done was replace one form of free glutamate with another, essentially-identical form. And the

Notice explains, because monosodium glutamate is the most popular form of free glutamate, "the term 'MSG'"—technically an abbreviation for monosodium glutamate—is used "to mean all forms of free glutamate that are added to food."  Notice at 48108; *see* Complaint ¶22; Ex. 2 (FDA Backgrounder) ("While technically MSG is only one of several forms of free glutamate used in foods, consumers frequently use the term MSG to mean all free glutamate").  Indeed, even the FDA uses the term "MSG" to refer to free glutamate generally.  FDA Q&A ("MSG [that is, free glutamate] occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract…").  As a result, the FDA noted, "consumers are likely to perceive a 'No MSG' or 'No added MSG' claim on a label as indicating the absence of all forms of free glutamate in the food." Notice at 48108; *see* Complaint ¶22.  While "technically such foods bearing a claim about the absence of MSG do not contain the ingredient monosodium glutamate, they frequently contain levels of free glutamate that cause claims like 'No MSG' and 'No added MSG' to be misleading."  Notice at 48108; *see* Complaint ¶22.

In other words, the FDA found that food manufacturers had reformulated their products to replace one ingredient that worried consumers (monosodium glutamate) with equivalent free-glutamate ingredients (like yeast extract) that consumers would not readily recognize as being essentially the same as monosodium glutamate.   Manufacturers then added a "No MSG added," label, which conveys to consumers that the product does not have monosodium glutamate *or other free glutamates* that are of equal concern.  As the FDA found, this practice is misleading to ordinary consumers.

Accordingly, the FDA concluded that a "food that bears a false or misleading claim about the absence of MSG is misbranded under section 403(a) of the [Food, Drug, and Cosmetics Act]."  Notice at 48108.  And, the Notice recounts, the "FDA has repeatedly advised consumers and industry that it considers such claims as 'No MSG' and 'No added MSG' to be misleading

when they are used on the labels of foods made with ingredients that contain substantial levels of free glutamate." *Id.*  Such foods are therefore "misbranded" under "existing law."  *Id.*; *see* Complaint ¶¶22-25.

The Notice goes on to propose "formal criteria" to address the labeling of food containing free glutamate in greater detail, and solicits public comment on those proposed criteria.  Notice at 48109.  Due to an "overall regulatory reform strategy" designed to "reduce [the FDA's] regulatory backlog and focus its resources on current public health issues," however, the FDA never ended up issuing any "formal criteria."  Withdrawal of Certain Proposed Rules and Other Proposed Actions, 69 Fed. Reg. 68831 (Nov. 26, 2004).  Accordingly, no subsequent regulations could have displaced or modified "existing law."  Notice at 48108.  And that "existing law" is that such claims as 'No MSG' and 'No added MSG' are "misleading when they are used on the labels of foods made with ingredients that contain substantial levels of free glutamate."  Notice at 48108; *see* Complaint ¶¶22-25.

In 2012, the FDA published a "Q&A" regarding monosodium glutamate.  In that Q&A, the FDA confirmed that "MSG [that is, free glutamate] occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses" and that foods with these or any other ingredient "that naturally contains MSG [that is, free glutamate] cannot claim 'No MSG' or 'No added MSG' on their packaging."  FDA Q&A; Complaint ¶24.

**C.    Defendant's ramen labels claim "No Added MSG," even though they contain autolyzed yeast and hydrolyzed proteins.**

A few years later, Defendant decided to do precisely what the FDA found to be misleading to consumers and expressly banned.  Defendant reformulated its ramen to remove crystallized monosodium glutamate powder as a standalone ingredient.  It replaced that form of

free glutamate with other sources of free glutamate, including autolyzed yeast and hydrolyzed proteins, that consumers could not easily identify. And it added a prominent "No Added MSG" claim to the label. Complaint ¶¶26-35.

Because, as the FDA concluded, to reasonable consumers "No Added MSG" indicates the absence of all free glutamate, Defendant's label is false and misleading. Complaint ¶¶38-60. It therefore violates the consumer protection and express warranty laws of New York and many other states. Complaint ¶¶75-115. Ms. Henry filed this lawsuit, on behalf of herself and similar consumers across the country, to hold Defendant accountable for its deceptive practices.

**III.    Ms. Henry plausibly alleges that a reasonable consumer would be misled.**

Defendant asserts that "the Complaint fails to plausibly allege [that] a reasonable consumer would be misled as a matter of law." Mot. 8-18. This argument misstates the pleaded facts and turns the motion to dismiss standard on its head. It should be rejected.

**A.    Ms. Henry plausibly alleges that Defendant's "No Added MSG" claim is misleading to reasonable consumers.**

Ms. Henry alleges that "Defendant prominently labels [its ramen] noodles 'NO ADDED MSG.'" Complaint ¶27; *see id.* ¶28-34 (giving examples).

She alleges that, "[b]ecause consumers use the term 'MSG' to refer to free glutamates generally (as opposed to the sodium salt form of free glutamate specifically), a reasonable consumer would understand" "NO ADDED MSG" to mean that Defendant's ramen "does not contain free glutamates—in sodium salt form or otherwise" and "does not contain any ingredients that themselves contain free glutamates." Complaint ¶¶17, 19.

"The truth, however, is that the No MSG Products do contain ingredients that contain free glutamates." *Id.* ¶38. Therefore labelling the ramen "NO ADDED MSG," "is misleading and false" to reasonable consumers. *Id.* ¶¶44; 12-15; 18; 19-25; 12-15; 18; 19-25 (additional

factual allegations explaining why reasonable consumers would understand "NO ADDED MSG" to indicate the absence of any form of free glutamate); ¶¶38-43 (additional facts showing that Defendant's products contain ingredients that contain free glutamate).  In addition, though not required at this stage, Ms. Henry provides evidence showing that these pleaded facts are true.  *id.* ¶13 n.6, ¶14 n.7, ¶18 n.7, ¶21-24.  This includes that the FDA—the federal agency tasked with evaluating how consumers understand claims on food labels—concluded that reasonable consumers would understand "No Added MSG" precisely as Ms. Henry alleges they would, *see, e.g.*, Complaint ¶¶21-25.  And the FDA reached this conclusion after carefully studying the issue, evaluating "numerous written and oral complaints charging manufacturers with hiding the presence of 'MSG' by declaring the substance under other names such as 'flavorings,' 'hydrolyzed protein,' 'autolyzed yeast extract,' and similar terms," and commissioning a report on the effects and consumer perceptions regarding free glutamate.  Complaint ¶¶21-22; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102 (Sept. 12, 1996); FDA Backgrounder.

In short: Ms. Henry pleads detailed facts showing that (1) reasonable consumers would understand Defendant's "No Added MSG" label to indicate that Defendant does not add free glutamate to its ramen, but (2) in truth, Defendant does add free glutamate to its ramen.  These factual allegations must be accepted as true at this stage.  And they establish that Defendant's products are misleading to reasonable consumers.

**B.    Defendant cannot show that Ms. Henry's allegations are "patently implausible" and "border on fantasy," especially because the FDA reached the same conclusion after carefully analyzing the issue.**

Defendant argues that the Court should dismiss Ms. Henry's claims because no reasonable consumer could be deceived by their "NO ADDED MSG" representation.  Defendant asserts that courts "routinely" dismiss consumer protection claims on this basis at the pleading

7

stage. Mot. 9-10. Every part of this argument is wrong.

To begin, whether a label is deceptive to reasonable consumers is not "routinely" decided on the pleadings. Rather, it "is generally a question of fact not suited for resolution at the motion to dismiss stage" that is decided on the pleadings "rarely." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020); *see Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("whether a particular act or practice is deceptive is usually a question of fact"). A pleadings-stage determination of this issue is an "exception[] to the norm" reserved for claims that are "patently implausible" and "border on fantasy." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021); *Hesse*, 463 F. Supp. 3d at 467 (cleaned up) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008))("Dismissal is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.") To prevail, Defendant must satisfy the "heavy burden of extinguishing the possibility that a reasonable consumer could be misled." *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *54 (E.D.N.Y. Aug. 29, 2013) (cleaned up). [2]

Defendant cannot satisfy this heavy burden. The only allegation Defendant challenges is the allegation that reasonable consumers understand "NO ADDED MSG" to indicate the absence of free glutamate. Mot. 13. This allegation is not "patently implausible" or borderline fantasy. As the Complaint alleges, the FDA—the federal agency tasked with determining whether marketing claims on food labels are misleading to consumers—concluded that this is precisely

---

[2] A good example of a claim that "borders on fantasy" the one in *Videtto*, where the plaintiff was claiming that reasonable consumers were being misled into thinking that "Froot Loops" were made with real fruit. *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *51 (E.D.N.Y. Aug. 29, 2013) (citing *Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114, at *8 (E.D. Cal. May 20, 2009)).

what the "average consumer" would understand "NO ADDED MSG" to mean.  Moreover, the FDA reached this conclusion after

- carefully studying the meaning of "MSG" and "NO ADDED MSG" to consumers;

- commissioning a report on the topic from the Federation of American Societies for Experimental Biology;

- receiving input from industry; and

- listening to consumer complaints on this very topic.

Defendant cannot credibly contend that the FDA's carefully-studied, well-reasoned conclusion about how consumers would interpret a "NO ADDED MSG" label is not only wrong, but so wrong that it is "patently implausible," "borders on fantasy," and warrants the exceptional result of dismissal on the pleadings.

Defendant asserts that "Nissin does not add MSG into the Products."  Mot. 11.  What Defendant means is that the crystallized sodium salt form of free glutamate, monosodium glutamate is not "directly added" into the product in as a standalone ingredient.  *Id*.  (Defendant does dispute that it adds free glutamate to its ramen "indirectly," by adding other ingredients, such as autolyzed yeast extract, which contain free glutamate.)  Defendant argues that, because monosodium glutamate is not directly added as a standalone ingredient, the "NO ADDED MSG" statement is true and therefore not actionable.  *Id*.  This argument fails.

If Defendant is suggesting that a reasonable consumer would understand "MSG" to be referring specifically to the crystallized sodium salt form of free glutamate as opposed to any free glutamate, that suggestion is directly contrary to pleaded facts (and directly contrary to the FDA's conclusion on this exact topic.)  Complaint ¶15 ("[T]o consumers, MSG means free glutamate."); *see* §III.A. above.  Likewise, if Defendant is suggesting that a reasonable consumer would understand "NO ADDED MSG" to mean that no MSG was added directly as a standalone

ingredient (as opposed to indirectly as a sub-ingredient of a different ingredient), that suggestion too is directly contrary to pleaded facts (and, again, directly contrary to the FDA's conclusion on this exact topic.) Complaint ¶19 ("[A] reasonable consumer would understand the statement … 'No added MSG' about a food product to mean that the product … does not contain any ingredients that themselves contain free glutamates."); *see* §III.A. above. It is also contrary to basic common sense. If an ingredient containing free glutamates is added to a product, then free glutamate is added to the product. [3]

Moreover, a representation "need not be false to mislead a reasonable consumer," it need only "be misleading or have the capacity, likelihood or tendency to deceive or confuse members of public." *Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp. 3d 453, 466 (S.D.N.Y. 2020). And even accepting Defendant's unduly narrow interpretations of "MSG" and "NO ADDED MSG," prominently stating "NO ADDED MSG" on a food item to which other ingredients containing free glutamates have been added is likely to deceive or confuse the public. Consumers read labels to give them meaning, instead of rendering them pointless. And telling consumers that the crystallized monosodium glutamate powder form of free glutamate has not been added to a food item is completely pointless if other "chemically indistinguishable" forms of free glutamate have been added, directly or indirectly. So, promoting food as "NO ADDED MSG" implies to reasonable consumers that no other form of free glutamate has been added either, such that the food "may be consumed by glutamate-intolerant consumers without risk of reaction." Complaint ¶22 (quoting FDA Notice at 48108). Why say that it has "NO ADDED MSG," if it has other

---

[3] Defendant suggests that the ingredients they add do not contain free glutamates when they are added to the products, and that instead those ingredients "break down when digested and produce free glutamates. *See, e.g.*, Mot. 4 (citing Notice at 48103). This is false (and contrary to pleaded facts.) As the Notice that Defendant cites explains, "ingredients like hydrolyzed soy protein, autolyzed yeast extract … <u>contain</u> free glutamate"—they do not merely produce free glutamate as a byproduct when digested. Notice at 48103 (emphasis added).

equivalent ingredients? [4]

Defendant asserts that FDA analyses supporting Plaintiff's allegations are "irrelevant" because a violation of FDA regulations "does not automatically translate into an actionable" consumer protection claim.  Mot. 12.  This argument lacks merit.

Courts have held that the bare fact that the FDA issued regulations banning a practice does not necessarily mean that the practice is misleading to reasonable consumers.  This is because some hyper-technical FDA regulations do not necessarily reflect the view of a reasonable consumer (the perspective that matters for establishing a violation of state false advertising laws).  *See, e.g., Warren v. Whole Foods Mkt. Grp., Inc.*, 2021 U.S. Dist. LEXIS 231930, at *10 (E.D.N.Y. Dec. 3, 2021) (the "[c]omplaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations" (internal quotes omitted)); *Garadi v. Mars Wrigley Confectionery Us*, 2021 U.S. Dist. LEXIS 128814, at *6 (E.D.N.Y. July 6, 2021) (violation of technical regulations for vanilla flavor in ice cream not relevant); *Steele v. Wegmans Food Mkts.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (same); *Pichardo v. Only What You Need, Inc.*, 2020 U.S. Dist. LEXIS 199791, at *6 n.6 (S.D.N.Y. Oct. 27, 2020) (same); *Daniel v. Mondelez Int'l*, Inc., 287 F. Supp. 3d 177, 192 (E.D.N.Y. 2018) (explaining that establishing a violation of New York law requires more than establishing an FDC Act violation).

In contrast, sometimes the FDA expressly considers the views of reasonable consumers when analyzing whether a practice violates the FDC Act or its implementing regulations.  And in this situation, the FDA's findings about how reasonable consumers would interpret a particular

---

[4] Finally, as the Complaint alleges, Defendant's products also contain at least some amount of actual monosodium glutamate in.  Complaint ¶34, 41.  This is because free glutamate in ingredients such as autolyzed yeast extract can bind to sodium already in Defendant's product to form monosodium glutamate.

11

label statement are highly relevant to whether the statement in question is misleading to reasonable consumers. After all, as the agency tasked with policing food labels to make sure that they are not misleading to consumers, the FDA has substantial expertise and experience evaluating whether a practice is deceptive to consumers. For this reason, "[i]n evaluating whether something is deceptive to the reasonable consumer, courts have given 'substantial weight'" to FDA determinations that a practice is misleading. *See, e.g., Atik v. Welch Foods, Inc.*, 2016 U.S. Dist. LEXIS 106497, at *37 (E.D.N.Y. Aug. 5, 2016); *see, e.g., Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, at *57 (E.D.N.Y. July 21, 2010) (giving "substantial weight" to FDA determination regarding the accused labeling practice was misleading to reasonable consumers); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 342 (E.D.N.Y. 2018) (relying on FDA regulations to support conclusion that "a reasonable consumer may be misled" by the defendant's accused labeling practice).

Here, Plaintiff is not claiming that Nissin's labels "automatically" violate state law merely because they violate FDA regulations. Nor is Plaintiff claiming that the "NO ADDED MSG" label is deceptive because it violates some technical aspect of an FDA regulation that has nothing to do with the views of reasonable consumers. *Cf., e.g., Warren v. Whole Foods Mkt. Grp., Inc.*, 2021 U.S. Dist. LEXIS 231930, at *10 (E.D.N.Y. Dec. 3, 2021) (dismissing the FDA regulations as "not relevant" because "the complaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations"). Rather, here, the FDA expressly analyzed how reasonable consumers would interpret a "NO ADDED MSG" claim like Defendant's, and concluded that making this claim would be misleading to reasonable consumers. *See* Notice at 48108; Complaint ¶¶20-25; 51-57. So not only are these analyses relevant; they are highly

probative and entitled to substantial weight. [5]

   **C.    The supposed "disclaimer" about "naturally occurring glutamate" does not render Defendant's labels truthful, much less do so as a matter of law.**

   In addition to the prominent "NO ADDED MSG" assertion, the packaging of Defendant's ramen also includes—in small lettering designed to blend into the background—a "disclaimer" stating "contains small amounts of naturally occurring glutamate." This is shown below:



   The disclaimer is, by design, hard to see. It is in pale, small, white font to the bottom left of the prominent "No Added MSG" claim. Complaint ¶¶28, 36. Nevertheless, Defendant suggests that this disclaimer renders their labels non-deceptive as a matter of law. Mot. 14-17. This argument fails on every level.

---

   [5] Defendant asserts in a footnote that "Plaintiff has no right of action to enforce FDA rules" and that "the FDA documents relied upon by Plaintiff are not binding" interpretations of the FDA rules. Mot. 12 n.8. Because Plaintiff is not attempting to "enforce FDA rules," but instead points to the FDA's reasoning and determinations as evidence of how consumers would understand the challenged "No Added MSG" claims, these assertions are beside the point.

To begin, "[t]he mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations in a label or advertisement." *Sitt v. Nature's Bounty, Inc*., 2016 U.S. Dist. LEXIS 131564, at *41 (E.D.N.Y. Sep. 26, 2016). Rather, "[t]he significance of a disclaimer depends upon factors such as the font size and placement of the disclaimer, as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement." *Id*.; *Mantikas v. Kellogg Co*., 910 F.3d 633, 637 (2d Cir. 2018) (reversing district court's conclusion that an accurate nutrition panel cured conspicuous claim suggesting that Cheez-Its are made primarily with whole grain, when they are not). And because determining how a reasonable consumer would react when confronted with a particular disclaimer in a particular context is a fact-specific inquiry, whether a disclaimer cures an otherwise misleading representation "is a fact question not suitable for resolution at this stage in the litigation." *Madenlian v. Flax USA Inc*., 2014 U.S. Dist. LEXIS 181473, at *19 (C.D. Cal. Mar. 31, 2014); *Lemberg Law, LLC v. Egeneration Mktg., Inc*., 2020 U.S. Dist. LEXIS 94879, at *30 (D. Conn. May 29, 2020) (whether a disclaimer "effectively cures an otherwise misleading advertisement is a matter of fact, which may be an improper determination on a Rule 12(b)(6) motion to dismiss.").

Here, there are two independent reasons why this factual issue cannot be decided in Defendant's favor, much less on the pleadings.

> **1.    A reasonable consumer would not notice the disclaimer, so the disclaimer cannot possibly cure any deception.**

The Complaint alleges that "a reasonable consumer would not notice the statement that [Defendant's ramen] contain[] small amounts of naturally occurring glutamates.'" Complaint ¶52. This is because "[t]he qualifying statements are off to the side and in a much smaller font than the NO ADDED MSG label. (The font size of the 'NO ADDED MSG' label is at least 3

14

times larger than the font of the qualifying statement)." *Id*. ¶53. "In addition—unlike the 'NO ADDED MSG' label, which is set out on a different colored label that emphasizes its presence—the qualifying statements are colored in a way to blend into the background." *Id*. These well-pleaded facts must be accepted as true at this stage. They preclude a finding that Defendant's disclaimer cures the otherwise misleading "NO ADDED MSG" representation.

Defendant argues that "No reasonable consumer would not notice the Disclaimer right in front of him or her." Mot. 15.

If Defendant is suggesting that, as a matter of law, reasonable consumers always notice disclaimers of a certain type (for example, ones "on the front of products," "right next to" the misleading statement, or "connected [to the misleading statement] by an asterisk," Mot. 2), that is wrong. Courts routinely find disclaimers indistinguishable from the one here to be insufficient to cure a more prominent, misleading statement. For example, in *Koenig v. Boulder Brands, Inc*., the defendant's milk cartons prominently stated "Fat Free Milk and Omega-3s." 995 F. Supp. 2d 274, 276 (S.D.N.Y. 2014). They also stated, in smaller font but still on the front panel, "1g Fat from Omega-3 Oil Blend." *Id*. 277. The court found that a "reasonable consumer might also focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega-3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label … Because it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled about the fat content of Smart Balance based upon its packaging, the Court DENIES Defendants' motion to dismiss on this basis." *Id.* at 288; *see, e.g., Stoltz v. Fage Dairy Processing Indus.,* 2015 U.S. Dist. LEXIS 126880, at *53 (E.D.N.Y. Sep. 22, 2015) (qualifier on front label and "in proximity to" allegedly deceptive statement insufficient to cure); *In re Frito-Lay N. Am., Inc*., 2013 U.S. Dist. LEXIS 123824, at *53-54 (E.D.N.Y. Aug. 29, 2013) (same); *Hughes v. Ester C*

15

*Co.*, 930 F. Supp. 2d 439, 463 (E.D.N.Y. 2013) (disclaimer connected to misleading statement by asterisk insufficient).

If Defendant is asking the Court to determine that, as a factual matter, consumers would notice Defendant's disclaimer based on its color, size, font, and placement, this is not something the Court can decide on the pleadings—particularly here, where the disclaimer is indisputably far less prominent than the "NO ADDED MSG" representation it supposedly qualifies. *Madenlian v. Flax USA Inc.*, 2014 U.S. Dist. LEXIS 181473, at *19 (C.D. Cal. Mar. 31, 2014); *Lemberg Law, LLC v. Egeneration Mktg., Inc.*, 2020 U.S. Dist. LEXIS 94879, at *30 (D. Conn. May 29, 2020); *Koenig v. Boulder Brands*, Inc., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014); *see Stoltz v. Fage Dairy Processing Indus.*, 2015 U.S. Dist. LEXIS 126880, at *53 (E.D.N.Y. Sep. 22, 2015); *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *53-54 (E.D.N.Y. Aug. 29, 2013).

### 2.    The "NO ADDED MSG" representation is deceptive even as qualified.

The Complaint alleges that "if a consumer did happen to notice the 'contains small amounts of naturally occurring glutamates' qualifier, that would not render the product packaging as a whole true or not misleading.'" Complaint ¶54. There are several reasons for this.

First, many consumers do not realize that the thing they are sensitive to or want to avoid is called "free glutamate." They just call it "MSG," without realizing that the thing they call "MSG" is free glutamate. As the FDA found, "the average consumer is not aware that … free glutamate is essentially equivalent to MSG." Notice, 61 Fed. Reg. 48102, 48104. For consumers who do not realize that "free glutamate" is another name for the very thing they want to avoid, a disclaimer announcing the presence of "naturally occurring glutamate" cannot possibly cure the deceptive impression left by the prominent "NO ADDED MSG"

16

representation.

  Second, even for consumers who know more, Defendant's disclaimer is still insufficient. This is because, as explained above, there are two types of glutamate: free glutamate, which is problematic, and bound glutamate, which is not. When confronted with a prominent "NO ADDED MSG" representation qualified by the statement "contains small amounts of naturally occurring glutamates," such consumers who know that free glutamate is the problem "would interpret this statement to convey that the 'naturally occurring glutamates' [found in the product] are not 'MSG,' i.e., the very free glutamates that concern consumers and the FDA." Complaint ¶54. Instead, he or she would interpret these statements in combination to mean that although the food does not contain added "MSG," i.e., free glutamate, it does contain other types of glutamate such as bound glutamate, which are not problematic (and which are never referred to as "MSG"). Complaint ¶14.

  Moreover, the disclaimer itself is deceptive. By specifying that the glutamates are "naturally occurring," the disclaimer falsely suggests that "naturally occurring" glutamates do not cause the same problems that manufactured free glutamates found in crystallized monosodium glutamate powder do (otherwise, there would be no reason to promote the absence of "MSG"). In addition, combined with the "NO ADDED MSG" representation, a disclaimer clarifying that "naturally occurring" glutamates are present suggests to reasonable consumers that the glutamates "happen to be in ingredients that are necessary to make the basic product (and not optional to enhance taste). But in fact, Defendant adds ingredients containing MSG and other free glutamates specifically for the purpose of" enhancing the taste of Defendant's ramen. Complaint ¶55. Once again, these well-pleaded facts must be accepted as true at this stage. They preclude a finding that Defendant's disclaimer cures the otherwise misleading "NO ADDED MSG" representation.

Defendant asserts that "[r]easonable consumers would not be misled into thinking that 'NO ADDED MSG*' means that there are no naturally occurring glutamates in the Products, because the Disclaimer explicitly says that the Products '*contain[] small amounts of naturally occurring glutamates.'" Mot. 14-15. This argument attacks a strawman. Ms. Henry is not claiming that reasonable consumers understand "NO ADDED MSG" to indicate the absence of all naturally occurring glutamates (bound as well as unbound). She claims that reasonable consumers understand "NO ADDED MSG" to indicate the absence of the thing consumers call "MSG," i.e., *free* glutamates only.

Defendant also asserts that "if confused by whether "NO ADDED MSG*" included ingredients that themselves contain free glutamates," a reasonable consumer would "look to the Disclaimer" and "see that the Products in fact do contain naturally occurring glutamates." This argument fails on two levels. First, a reasonable consumer would not be confused about whether a product labelled "NO ADDED MSG" includes free glutamate because, as explained above, a reasonable consumer would understand this representation to mean that the product does not contain any free glutamate. *See* §III.A. above. Second, for the reasons explained above, the use of the word "glutamate" in the disclaimer is itself confusing (not clarifying).

In sum, even as qualified, whether the "No MSG" claim is misleading to reasonable consumers is a factual issue that cannot be resolved on the pleadings. *See, e.g., Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (a disclaimer that "set forth accurately the amount of whole grain in the crackers per serving" did not cure deceptive statements conveying that the grain was predominantly whole grain, as it "does not indicate the ratio of whole grain to white flour"); *Acquard v. Big Heart Pet Brands*, 2020 U.S. Dist. LEXIS 224712, at *7 (W.D.N.Y. Nov. 30, 2020) (ambiguous disclaimer could not cure deception); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (same); *Stoltz v. Fage Dairy*

18

*Processing Indus.*, 2015 U.S. Dist. LEXIS 126880, at *53 (E.D.N.Y. Sep. 22, 2015) (same); *In re Frito-Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 123824, at *53-54 (E.D.N.Y. Aug. 29, 2013) (same).

> **D.    The ingredients list on the back panel does cure the deception caused by the prominent "NO ADDED MSG" label, both under controlling law and as a factual matter.**

Defendant alternatively asserts that any deception caused by the "NO ADDED MSG" label would be "remedied by the ingredients list on the back of the Products, which provides all of the ingredients to consumers." Mot. 16. But under controlling Second Circuit law, an accurate listing of the ingredients in an ingredients panel on the side of the box cannot cure a deceptive representation on the front of the box. This is because "[r]easonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (cleaned up). And in any event, reading the ingredients panel would not tell the average consumer that an MSG-like substance is present in the food. As the FDA has recognized, "[b]ecause the average consumer is not aware that ingredients like hydrolyzed soy protein, autolyzed yeast extract, tomato paste, and parmesan cheese contain free glutamate or that free glutamate is essentially equivalent to MSG, declaration of these ingredients by their common or usual names does not indicate to the consumer that an MSG-like substance is present in the food." Notice at 48103.

## IV.    Conclusion.

This is far from a case that is "implausible" or "borders on fantasy." Ms. Henry's allegations about Defendant's "NO MSG" labels are backed by extensive FDA findings on how this claim misleads reasonable consumers. As a result, whether the "No MSG" claim is misleading to reasonable consumers is (as in most cases) a factual issue that cannot be resolved

on the pleadings.  Defendant's motion should be denied. [6]

Dated: May 24, 2022                              Respectfully submitted,


                                                 By: */s/ Simon Franzini*

                                                 Simon Franzini (Cal. Bar No. 287631)*
                                                 simon@dovel.com
                                                 Jonas B. Jacobson (Cal. Bar No. 269912)*
                                                 jonas@dovel.com
                                                 DOVEL & LUNER, LLP
                                                 201 Santa Monica Blvd., Suite 600
                                                 Santa Monica, California 90401
                                                 Telephone: (310) 656-7066
                                                 Facsimile: (310) 656-7069

                                                 Zack Broslavsky (State Bar No. 241736)*
                                                 zbroslavsky@bwcounsel.com
                                                 BROSLAVSKY & WEINMAN, LLP
                                                 1500 Rosecrans. Ave, Suite 500
                                                 Manhattan Beach, CA 90266
                                                 Telephone: (310) 575-2550
                                                 Facsimile: (310) 464-3550
                                                 Counsel for Plaintiff and the Proposed Class

                                                 *Admitted Pro Hac Vice

---

[6] Plaintiff withdraws her Magnuson-Moss Warranty Act claims (Count V).  Accordingly, Defendant's additional challenges to that Count are moot.