UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE HENRY, individually and on behalf of all others similarly situated,

                              Plaintiff(s),

          -against-

NISSIN FOODS (U.S.A.) CO. Inc.,

                              Defendant(s).

**MEMORANDUM & ORDER**

**22-CV-363 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Stephanie Henry brings various claims against Defendant Nissin Foods (U.S.A.) Co. Inc. ("Nissin Foods") over its use of the phase "No Added MSG" in relation to certain products that it manufactures and sells. She seeks relief on behalf of herself and a proposed class of similarly situated purchasers of Defendant's products, asserting claims for (i) violation of various state consumer protection statutes; (ii) deceptive business practices under N.Y. G.B.L. § 349; (iii) deceptive advertising under N.Y. G.B.L. § 350; (iv) breach of express warranty; and (v) breach of the Magnuson-Moss Warranty Act. Defendant has moved to dismiss Plaintiff's Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (*See* Def's. Mot. to Dismiss ("Def's. Mot.") (Dkt. 28-1).)

For the following reasons, the Defendant's motion is GRANTED.

## I.   BACKGROUND[1]

Nissin Foods is a California Corporation that manufactures and distributes instant noodle food products, including Cup Noodles, Top Ramen, Hot & Spicy, and Chow Mein (the "Products"). (Compl. (Dkt. 1) ¶¶ 1, 4, 27.) Nissin is a subsidiary of Nissin Foods Holdings Co., Ltd., a Japanese company. (*Id.* ¶ 4.) Plaintiff is a citizen of New York, who has purchased Cup Noodles as recently as early 2022. (*Id.* ¶¶ 3, 61.)

Glutamic acid and its salts are known as "free glutamates." (*Id.* ¶ 8.) They provide an "umami" or savory taste to food. (*Id.*) Monosodium glutamate, frequently referred to as "MSG," is a sodium salt form of glutamate used in prepared foods. (*Id.* ¶ 12.) The free glutamates in MSG have the same chemical composition as free glutamates in other glutamic acid salts. (*Id.* ¶ 14.) Manufacturers of food products frequently add free glutamates or ingredients containing free glutamates to their products to improve flavor. (*Id.* ¶ 9.) Some researchers, however, believe that free glutamates can lead to adverse health effects, and some consumers have also reported sensitivity or allergies to foods containing free glutamates. (*Id.* ¶¶ 9-10.) As a result, some consumers avoid foods containing free glutamates. (*Id.* ¶ 11.)

The Food and Drug Administration ("FDA") has recognized that consumers frequently use the term "MSG" to refer to free glutamates more broadly. (*Id.* ¶ 13.) Though food manufacturers prominently label their products "No MSG" or "No Added MSG,"

---

[1] The following facts are taken from the Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022). The Complaint is also deemed to include documents incorporated in it by reference and that are "integral." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The court considers the exhibits that Defendant submitted with its motion—the full packaging of the Products—to be integral to the Complaint.

(*Id.* ¶ 16), the FDA has stated that it considers these labels to be misleading where a product contains ingredients that are sources of free glutamates. (*Id.* ¶ 21.) The FDA has also stated that foods containing any form of free glutamate cannot include "No MSG" or "No Added MSG" labels on their packaging under § 403(a) of the Food and Drug Administration Act. (*Id.* ¶ 24.) The agency does, however, treat "added MSG" and ingredients in which "MSG naturally occurs" differently in regard to the ingredient panel on product packaging. (*Id.*) If "added MSG" is present, the ingredient panel must list monosodium glutamate, but if ingredients in which "MSG naturally occurs" are present, the FDA does not require the panel to specify as such. (*Id.*)

The packaging for each of the Products prominently displays a "No Added MSG" label in capital letters and large bold font in light blue circles. (*Id.* ¶ 29.) One such label is depicted in the image below:



(*Id.* ¶ 28.) The packaging also includes the following disclaimer in small lettering: "contains small amounts of naturally occurring glutamates." (*Id.* ¶ 36.) Defendant also advertises that these Products have "no added MSG" on its website and in product literature. (*Id.* ¶¶ 27, 31-33.)

Despite these labels, certain ingredients in the Products contain free glutamates. (*Id.* ¶ 2.) This includes, for example,

"Hydrolyzed Corn Protein," "Hydrolyzed Soy Protein," and "Maltodextrin." (*Id.* ¶¶ 40-41.) Defendant does not, however, add MSG directly into the Products, and monosodium glutamate is not listed on their ingredient panels. (*See* Ex. A to Chung Decl. (Dkt. 28-3); Ex. B to Chung Decl. (Dkt. 28-4); Ex. C to Chung Decl. (Dkt. 28-5); Ex. D to Chung Decl. (Dkt. 28-6); *see also* Compl. ¶ 40.)

Plaintiff alleges that Defendant includes a "No Added MSG" label on the Products' packaging and repeats this assertion in advertising to create the impression that the Products do not contain free glutamates or ingredients that contain free glutamates. (*Id.* ¶ 35.) A reasonable consumer, according to Plaintiff, would believe that the Products do not contain any free glutamates whatsoever because of this representation. (*Id.* ¶¶ 19, 35.) Moreover, she alleges that the qualifying statement on the Products' packaging does not correct this misconception. (*Id.* ¶ 37.)

Plaintiff brings the instant suit on behalf of herself and all other persons who purchased one of the Products in the United States during the applicable statute of limitations period (the "Nationwide Class"). (*Id.* ¶ 65.) In Count I, Plaintiff alleges violation of 44 state consumer protection statutes on behalf of herself and consumers who live in those states (the "Consumer Protection Subclass"). (*Id.* ¶ 76.) She alleges in Counts II and III the violation of N.Y. G.B.L. §§ 349 and 350 on behalf of herself and all consumers who purchased the Products in New York. (*Id.* ¶¶ 82-99.) Finally, Plaintiff asserts breach of express warranty and the Magnuson-Moss Warranty Act in Counts IV and V, respectively, on behalf of herself and the Nationwide Class. (*Id.* ¶¶ 100-15.)

The Defendant moves to dismiss all counts in the Complaint. (Def's. Mot. at 1.)

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* In deciding a motion to dismiss, the court will accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). However, allegations that "are no more than conclusions [] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Dismissal for failure to state a claim is appropriate if it is clear from the face of the complaint that a claim is barred as a matter of law. *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019). Where an individual plaintiff brings claims on behalf of themself and a class but fails to state a claim, the court lacks jurisdiction to adjudicate the putative class claims. *See Lin v. Canada Goose US, Inc.*, __ F. Supp. 3d __, 2022 WL 16926312, at *9 (S.D.N.Y. Nov. 14, 2022) (collecting cases).

## III.   DISCUSSION

### 1.   Counts I-III

Plaintiff alleges violations of state consumer protection statutes on behalf of herself and the Consumer Protection Subclass in Count I and deceptive practices under N.Y. G.B.L. §§ 349 and

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

350, respectively, in Counts II and III on behalf of herself and the New York Subclass. The court assumes that Plaintiff's individual claim in Count I arises under N.Y. G.B.L. § 349 because she is a New York domiciliary, (Compl. ¶ 3), and as she asserts claims under New York law in Counts II and III. Though the Consumer Protection Subclass seeks relief in Count I under numerous state consumer protection statutes, the court will not discuss other state statutes here. If the court finds that Plaintiff has failed to state a claim under N.Y. G.B.L. §§ 349 and 350, it will lack jurisdiction to adjudicate the class claim on Count I as well. *Lin*, 2022 WL 16926312, at *9.[3]

Section 349 prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." *Id.* § 350. The standard for deceptive advertising under § 349 is substantively identical to that for false advertising under § 350. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007).

"To successfully assert a claim under either [N.Y. G.B.L. §§ 349 or 350], a plaintiff must allege that a defendant has engaged

---

[3] Surveys of consumer protection statutes across the country have also found that the elements of such statutes are similar across jurisdictions, and the "critical issue . . . is whether a reasonable consumer would be misled by [a d]efendant's statement." *See Harris v. Mondelēz Glob. LLC*, No. 19-CV-2249 (ERK) (RER), 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020); *see also In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017). As discussed below, the reasonable consumer inquiry is the primary issue debated by the parties regarding Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims. Accordingly, claims under other state consumer protection statutes would also likely rise and fall with the analysis conducted herein of Counts II and III.

in (1) consumer-oriented conduct that is (2) materially mislead-
ing and that (3) plaintiff suffered injury as a result of the
allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802
F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Con-
dit Co.*, 18 N.Y.3d 940, 941 (2012)). Conduct is "consumer-
oriented" if it has a broader impact on consumers at large as op-
posed to just the plaintiff. *Donnenfeld v. Petro, Inc.*, 333 F. Supp.
3d 208, 222 (E.D.N.Y. 2018). This requirement is met so long as
the conduct at issue can "potentially affect similarly situated con-
sumer." *Id.* (citing *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d
Cir. 2015)). The New York Court of Appeals has adopted an ob-
jective standard of "materially misleading" whereby the
complained-of conduct must be "likely to mislead a reasonable
consumer acting reasonably under the circumstances." *Orlander*,
802 F.3d at 300. The "injury" component of the pleading stand-
ard includes a causation element requiring the plaintiff to show
that the defendant's material deceptive act caused the injury.
*Grossman v. GEICO Cas. Co.*, No. 21-CV-2789, 2022 WL 1656593,
at *3 (2d Cir. May 25, 2022) (Summary Order) (quoting *Gale v.
Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (2d Dep't 2004)).
"[A] plaintiff must allege that, on account of a materially mis-
leading practice, she purchased a product and did not receive the
full value of her purchase." *Orlander*, 802 F.3d at 302; *Am. Dev.
Grp., LLC v. Island Robots of Fla.*, 17-CV-3223 (NGG) (PK), 2019
WL 5790265, at *10 (E.D.N.Y. Oct. 4, 2019).[4]

The parties primarily dispute whether a reasonable con-
sumer would be misled by the "No Added MSG" label and the

---

[4] The Second Circuit has held that actions under N.Y. G.B.L. §§ 349 and
350 need only satisfy the pleading requirements under FRCP 8(a), as op-
posed to those under FRCP 9(b), which require a showing of intent. *See
Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511-12 (2d Cir.
2005).

Products' packaging. According to Defendant, "[n]o reasonable consumer would be confused by the Products[' packaging] because: (1) no MSG is actually added to the Products, (2) . . . FDA guidance is irrelevant, and (3) the Products contain a Disclaimer right next to the phase 'No Added MSG*,' which informs consumers that the Products do in fact contain naturally occurring glutamates. (Def's. Mot. at 3.) Plaintiff counters that the Complaint states facts showing that a reasonable consumer would understand the "No Added MSG" label to mean that Defendant does not add free glutamates to the Products. (Pl's. Opp. (Dkt. 28-7) at 7.) She also argues that these arguments must be accepted as true at the pleading stage. *Id.*

Whether or not a reasonable consumer would be misled by the allegedly deceptive packaging is a question of law that can be decided by a court at motion to dismiss. *See Fink*, 714 F.3d at 741. It is not a question of fact. (*Cf.* Pl's. Opp. at 8.) Mere allegations in a complaint that a statement would mislead a reasonable consumer do not satisfy a plaintiff's burden at the pleading stage. *See, e.g., Wynn v. Topco Asscs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021) (noting that allegations in a complaint about a reasonable consumer's interpretations of a label "are conclusory statements that the Court is not required to accept [at motion to dismiss]"). While dismissal of an N.Y. G.B.L. §§ 349 or 350 claim on this basis is an "exception[] to the norm," *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 95 (S.D.N.Y. 2021), courts in this circuit have regularly done so when warranted considering the alleged facts. *See, e.g., Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 117 (E.D.N.Y. 2021); *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 96 (S.D.N.Y. 2021); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018); *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886 (EK) (PK), 2021 WL 4502439, at *1 (E.D.N.Y. Sept. 30, 2021).

8

As noted above, materially misleading representations are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300. This inquiry is objective. *Cohen v. JPMorgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). "Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole. The entire mosaic is viewed rather than each tile separately." *Belfiore v. Proctor & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015). A representation need not be false to mislead a reasonable consumer, it must only be "misleading or have the capacity, likelihood or tendency to deceive or confuse members of [the] public." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 466 (S.D.N.Y. 2020).

Plaintiff's argument on the misleading nature of the "No Added MSG" label rests in large part on FDA guidance and statements. The parties each cite cases regarding the relevance of FDA statements in determining liability under state consumer protection statutes. (*See* Def's. Mot. at 12; Pl's. Opp. at 11-12.) Plaintiff acknowledges that FDA guidance has been disregarded in certain cases but argues that this has only occurred where the regulations at issue are "hyper-technical" and "do not necessarily reflect the view of a reasonable consumer." (Pl's. Opp. at 11.) This distinction has not been recognized in caselaw. *See, e.g.*, *Warren*, 574 F. Supp. 3d at 113-14 (finding FDA regulations to be inapplicable to the reasonable consumer analysis under N.Y. G.B.L. §§ 349 and 350); *Garadi v. Mars Wrigley Confectionery US, LLC*, No. 19-CV-3209 (RJD) (ST), 2021 WL 2843137, at *3 (declining to consider FDA regulations in the context of evaluating claims under N.Y. G.B.L. §§ 349 and 350). It is also unclear which FDA regulations are so "hyper-technical" as to be unrelated to the views of reasonable consumers. In the court's view, such a determination would be difficult to ascertain. One would imagine that many FDA regulations involve some degree of technical expertise.

But the court need not try to draw this line. The pertinent question is whether the specific FDA documents cited in the Complaint are persuasive as to the instant reasonable consumer inquiry. The Complaint cites three FDA documents: 1) a 1996 notice of proposed rulemaking posted in the Federal Register; 2) a 1995 "FDA Backgrounder;" and 3) a 2012 Q&A about MSG posted on the FDA's website. (Compl. ¶¶ 21-24.) The 2012 Q&A is not probative of misrepresentations to a reasonable consumer because it does not refer to any labeling practices that are "misleading." (*Id.* ¶ 24.) The document merely states that products with ingredients that naturally contain MSG cannot claim that they have "No added MSG." (*Id.*)

The first two FDA documents, the 1996 notice of proposed rulemaking and 1995 backgrounder, do, however, expressly state that a "No Added MSG" label is "misleading" to consumers if placed on a product containing ingredients that are sources of free glutamates. (*Id.* ¶¶ 21-23.) Yet "misleading" under the Federal Food, Drug, and Cosmetic Act ("FDCA") is not necessarily the same as "materially misleading" under state consumer protection statutes, such as N.Y. G.B.L. §§ 349 and 350. Under the FDCA, "in determining whether the labeling or advertising is misleading there shall be taken into account . . . not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article." 21 U.S.C. § 321(n); *see also* 21 U.S.C. § 343(a) (noting that food is misbranded if "its advertising is false or misleading in a material respect"). The New York Court of Appeals has prescribed a different meaning for the term "materially misleading"—that which is likely to mislead a reasonable consumer acting reasonably under the circumstances. *Orlander*, 802 F.3d at 300.

Notwithstanding Plaintiff's assurance that the FDA expressly considers the view of reasonable consumers when analyzing practices under the FDCA, (Pl's. Opp. at 11), the term "reasonable consumer" appears nowhere in the FDCA's definition of "misleading." While the FDA may have "substantial experience" evaluating misleading labels under the FDCA, (*id.* at 12), this expertise does not necessarily transfer to determining whether something is materially misleading under N.Y. G.B.L. §§ 349 and 350. Other courts in this circuit have reached the same conclusion. *See Warren*, 574 F. Supp. 3d at 113 ("The FDA and New York law apply different standards."); *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 49 (S.D.N.Y. 2020) ("[T]he extensive discussion and argument in the motion papers with respect to particular federal standards for ice cream flavor descriptions is without consequence."); *Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018) ("While the FDCA and parallel state statutes define a 'misrepresentation' for purposes of those statutes, New York courts . . . have adopted an objective definition of what constitutes a 'material misrepresentation' under sections 349 and 350—a definition that takes context into account."); *see also Bush v. Mondelēz Int'l, Inc.*, No. 16-CV-02460 (RS), 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016).[5] Accordingly, the court will not consider the FDA's statements on the misleading nature of the term "No Additional MSG" in determining whether Plaintiff has pleaded sufficient facts as to

---

[5] Plaintiffs' briefing cites cases where the court considered FDA materials in weighing whether a statement was materially misleading under GBL §§ 349 and 350. (*See* Pl's. Opp. at 12.) But these cases do not acknowledge the difference between "misleading" under the FDCA and "materially misleading" under GBL §§ 349 and 350. They also invoke FDA statements as part of broader analyses. *See Atik v. Welch Foods, Inc.*, 15-CV-5405 (MKB) (VMS), 2016 WL 11480151, at *12 (E.D.N.Y. Aug. 5, 2016); *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395 (JG) (RML), 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 342 (E.D.N.Y. 2018).

the reasonable consumer inquiry. *See also Barretto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) ("[The plaintiff] cannot state a claim here because . . . the conduct alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under GBL §§ 349-350."); *Hawkins v. Coca-Cola Co.*, No. 21-CV-8788 (KMK), 2023 WL 1821944, at *8 (S.D.N.Y. Feb. 7, 2023) (same).

Still, Plaintiff presents other arguments for why "No Added MSG" label could be materially misleading. The parties diverge on the nature of the deception created by the "No Added MSG" label. Plaintiff argues that the label would mislead a reasonable consumer as to the presence of *free glutamates* in the Products, (*see* Pl's. Opp. at 7), while Defendant argues that the label properly conveys the lack of added *MSG*. (*See* Def's. Mot. at 11.) But the Complaint alleges deception over the inclusion of *free glutamates* in the Products, not whether MSG was added to them. (Compl. ¶¶ 34-35.) The Complaint also alleges facts supporting that consumers frequently use the term "MSG" to mean all free glutamates and that they seek to avoid buying products containing free glutamates. (Compl. ¶¶ 8-11, 13-15.) The court will accept both assertions as true for the instant motion.

Assuming that "MSG" and "free glutamates" are given the same meaning, a reasonable consumer could plausibly believe, based on the "No Added MSG" label, that no ingredients containing free glutamates were used in the Product. The word "Added," as used in modifying "MSG," does not necessarily imply addition at the end of the production process. (*Cf.* Def's. Mot. at 11.) It could plausibly be read as applying to ingredients used to make the Products. A reasonable consumer could thus read the label to mean that no glutamates were added to the Products in any manner—be it at the end of the production process in crystalized sodium salt form (*i.e.*, pure MSG) or through use of certain ingredients. Given that free glutamates are present in the Products,

(Compl. ¶ 38,) the "No Added MSG" label could therefore imbue a reasonable consumer with an incorrect belief.

But this is not the end of the inquiry. The court must also look to the disclaimer next to the "No Added MSG" label to determine if it corrects the misconception created by the label. "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial . . . under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742; *see also Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674-75 (E.D.N.Y. 2017). Courts can, at motion to dismiss, consider the efficacy of a disclaimer in dispelling a misleading impression created elsewhere on a label. *See, e.g., Boswell*, 570 F. Supp. 3d at 96; *Warren*, 574 F. Supp. 3d at 116-17; *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).

In assessing the effectiveness of a disclaimer, courts consider both its formatting and its substance. As to formatting, courts look to "factors such as the font size, placement, and emphasis." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017). Yet, "[r]easonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*, 910 F.3d at 637 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)); *see also Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 103 (E.D.N.Y. 2020).

The Products' packaging includes the following disclaimer: "contains small amounts of naturally occurring glutamates." (Compl. ¶ 36.) Plaintiff argues that a reasonable consumer would fail to notice this disclaimer, thereby rendering it ineffective (*Id.*

¶¶ 52-53.)[6] But the court disagrees. The disclaimer here is on the front of the packaging right next to the "No Added MSG" label. (*Cf. id.* ¶ 53.) It is in the same white, capitalized lettering as the labels at issue, though undoubtedly in smaller font. *See Koenig,* 995 F. Supp. 2d at 288 ("[A] reasonable consumer might . . . overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label."). The disclaimer is also linked to the "No Added MSG" label by an asterisk. This asterisk puts consumers that read the "No Added MSG" label on notice that the packaging contains related additional information. In this context, the court cannot conclude that a reasonable consumer would not notice the disclaimer. (Compl. ¶ 52; Pl's. Opp. at 14.) The proximity of the disclaimer to the "No Added MSG" label on the front of the packaging, the asterisk in the label linking to the disclaimer, and the common color typeface used in the two convince the court that the disclaimer's formatting does not render it ineffective. A reasonable consumer would not miss it. Concluding otherwise would "attribute[] to consumers a level of stupidity that the Court cannot countenance." *See Kommar v.*

---

[6] Plaintiff cites several cases where a disclaimer did not cure a misleading statement as support. (Pl's. Opp. at 14-16.) But these cases involve either disclaimers that are physically not proximate to the misleading statement, *see Madenlian v. Flax USA Inc.,* No. 13-CV-1748 (JVS) (JPRx), 2014 WL 7723578, at *4 (C.D. Cal. Mar. 31, 2014) (discussing an ingredient list on the *back* of the packaging) (emphasis added); *Lemberg Law, LLC v. eGeneration Mktg., Inc.,* No. 18-CV-570 (CSH), 2020 WL 2813177, at *10-11 (D. Conn. May 29, 2020) (finding that a consumer would not notice a disclaimer on the "very bottom" of a webpage); *Koenig,* 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (pertaining to a disclaimer on the *back* of the product) (emphasis added); *Stoltz v. Fage Dairy Processing Indus.,* No. 14-CV-3826 (MKB), 2015 WL 5579872, at *14-15 (E.D.N.Y. Sept. 22, 2015) (rejecting clarifying language not in close proximity to the deceptive language), or pertain to substance of the disclaimer rather than its formatting. *See In re Frito-Lay N. Am., Inc. All Nat. Litig,* No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *16 (finding that clarifying language did not extinguish the possibility that reasonable consumers could be misled without referencing the size, placement, or emphasis of the language).

*Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017).

To be effective, the disclaimer must also substantively dispel the misleading impression created by the "No Added MSG" label. The ability of a disclaimer to cure a misrepresentation created elsewhere on a product's packaging depends on the nature of such misrepresentation. The Second Circuit in *Mantikas* found that the labels "Whole Grain" and "Made with Whole Grain" on the front of a product's packaging falsely implied that the grain content was at least predominately whole grain, where in fact the grain content was composed largely of enriched white flour. 910 F.3d at 637. Information elsewhere on the packaging that displayed the precise whole grain content could not cure the misleading impression created by these labels. *Id.* Rather, according to the Second Circuit, the plaintiffs plausibly alleged that "the Nutrition Facts panel and ingredients list on whole grain Cheez-Its—which reveals that enriched white flour is the predominant ingredient—contradict, rather than confirm Defendant's 'whole-grain' representations on the front of the box." *Id.* Courts in this circuit have interpreted *Mantikas* as drawing a distinction between false and ambiguous representations, the latter of which can be cured by an accurate, clarifying disclaimer. *See Engram*, 2021 WL 4502439, at *3 ("Where the front of a package makes a bold and blatant misstatement about a key element of a product, there is little chance that clarification or context on the reverse of the package will suffice to overcome a deception claim . . . . But when the front of the package is better characterized as ambiguous than misleading, courts look[] at the alleged misrepresentations in their full context and are more likely to grant a motion to dismiss."); *see also Foster v. Whole Foods Mkt. Grp.*, No. 22-CV-1240 (ERK) (RML), 2023 WL 1766167, at *3 (E.D.N.Y. Feb. 3, 2023); *Boswell*, 570 F. Supp. 3d at 94-95; *Bynum v. Fam. Dollar Store, Inc.*, 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022). The court will adopt the same approach here.

The phrase "No Added MSG" is ambiguous. It could imply, as the Defendant suggests, that pure MSG—the crystalized sodium salt form of free glutamate—is not added to the Product. Alternatively, it could suggest, as Plaintiff argues, that the Products contain no free glutamates at all. A reasonable consumer could plausibly come away with either impression. The court must therefore evaluate this ambiguous statement in conjunction with the disclaimer. *See Boswell*, 570 F. Supp. 3d at 94-95. The disclaimer states "contains small amounts of naturally occurring glutamates." Plaintiff's proffered interpretation of the label—no free glutamates whatsoever—directly conflicts with the disclaimer, which states that natural glutamates are in fact present. (*See* Compl. ¶ 57.) A reasonable consumer would thus reject Plaintiff's interpretation and turn to one that can be reconciled with the clear, unambiguous disclaimer, such as the interpretation put forth by Defendant—no addition of free glutamates in crystalized sodium salt form (*i.e.*, MSG).[7] While the disclaimer does not expressly state that certain ingredients contain free glutamates, it puts consumers on notice of this possibility. Therefore, the disclaimer, when read in conjunction with the "No Added MSG" label, clarifies any misconception created by the label.

Plaintiff's arguments to the contrary are unavailing. She contends that the disclaimer does not cure the misconception left by the label for consumers who seek to avoid MSG but are unaware that the term "free glutamate" means the same thing. (Pls' Opp. at 16.) Yet the Complaint specifically alleges that "to consumers,

---

[7] It is not necessarily the case, as Plaintiff argues, that a reasonable consumer would reconcile this contradiction in favor of the "No Added MSG" label by virtue of the label being the statement that the disclaimer clarifies. (Compl. ¶ 56.) Rather, where, as here, the misleading statements is ambiguous and the disclaimer is unequivocal, a reasonable consumer would reconcile in favor of the disclaimer. The clarity of the language would play a greater role in reconciling the two than which statement modifies the other.

MSG means free glutamate" and that "the only reason a con-
sumer might want to avoid consuming foods that contain MSG is
if they want to avoid consuming free glutamates." (Compl. ¶ 15.)
Plaintiff's argument here directly conflicts with her allegations in
the Complaint. Effectively, according to Plaintiff, consumers
equate MSG with free glutamates when reading the "No Added
MSG" label but are wholly unaware that the two are related
when reading the disclaimer. Plaintiff cannot have it both ways.
Further, any consumer who is unaware that MSG and free gluta-
mates refer to the same thing, as alleged, could not be misled in
the first place, as Plaintiff fails to allege that the Products contain
MSG specifically.

    Returning to learned consumers, Plaintiff next argues that
the term "naturally occurring glutamates" may be interpreted as
referring to "bound glutamates," a benign form of glutamate, as
opposed to "free glutamates," and is therefore misleading. (Pl's.
Opp. at 17; *see also* Compl. ¶ 54 ("[A] reasonable consumer
would interpret [the disclaimer] to convey that the 'naturally oc-
curring glutamates' are not 'MSG,' *i.e.*, the very free glutamates
that concern consumers and the FDA.").) But Plaintiff provides
no explanation as to why the phrase "naturally occurring" creates
such an impression. There is no indication that one form of glu-
tamate is artificial, while the other is natural.[8] Nor does the term
"naturally occurring" suggest that the glutamates are benign. In
fact, the FDA notice of proposed rulemaking cited in the Com-
plaint notes that L-glutamate, a potentially reaction-causing form
of free glutamate, could be "naturally occurring," and, in this con-
text, further notes the similarity between "manufactured" and
"naturally occurring glutamates." (*See* Compl. ¶ 54.) Plaintiff's

---

[8] This argument is also belied by Plaintiff's own admission that "use of the
word 'glutamate' in the disclaimer is itself confusing." (Pl's. Opp. at 18.) It
remains unclear how the disclaimer could be specific enough to be inter-
preted as referring to "bounded glutamates" but at the same time be broad
enough as to be confusing.

opposition also likens "naturally occurring free glutamates" and "manufactured free glutamates." (Pls. Opp. at 2-3.)

Last, there is no reason to believe that the term "naturally occurring" implies essential to production, as Plaintiff contends. (Pl's. Opp. at 17.) A plain reading of the term does not create such an impression. It suggests that glutamate is a "natural constituent of the food, like protein or a vitamin." *See* Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48103 (Sept. 12, 1996). To the contrary, interpreting "naturally occurring" to mean essential to production here would require a strained, unnatural reading. There is no essential form of the Products; "Cup Noodles" do not exist in nature. There is no ingredient that is a natural constituent to these products. The Products only exist in the form in which Plaintiff manufactures them. A reasonable consumer would know this and not read the "naturally occurring" label to imply inherent or essential to production.

Therefore, the court finds that the disclaimer clarifies any incorrect impression created by the "No Added MSG" label and that a reasonable consumer would not be misled to believe that the Products do not contain free glutamates. They would reach this conclusion without being forced to consult the ingredient panel on the Products' packaging. (*See* Def's. Mot. at 16; Pl's. Opp. at 19); *see also Mantikas*, 910 F.3d at 637 ("[R]easonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Plaintiff also alleges that Defendant repeats the "No Added MSG" claim in advertisements on its website and on Internet searches. (Compl. ¶¶ 31-33.) Based on snapshots included in the Complaint, the disclaimer, or other similar language, does not appear next to these advertisements or search results. (*Id.*) A reasonable consumer who views this claim in isolation might

therefore believe that there are no glutamates in the Products. But Plaintiff has not alleged that purchasers buy the Products online or that they could do so via the webpages containing the alleged statements. Based on the allegations in the Complaint, purchasers are necessarily exposed to the Products' packaging—and therefore the disclaimer—any time they purchase the Products. Any misconception created by viewing the "No Added MSG" message online would be dispelled when a purchaser buys one of the Products in person. The lack of disclaimer next to the "No Added MSG" statement on Defendant's online advertisements and search results therefore would not alter the disclaimer's effectiveness. *See also Bowring*, 234 F. Supp. 3d at 391 (finding that a disclaimer on a product label properly qualified the defendant's television advertisements and statements on its website, as well as representations elsewhere on the label).

Accordingly, the court GRANTS Defendant's motion to dismiss the N.Y. G.B.L. §§ 349 and 350 claims.

### 2.   Count IV

Plaintiff also brings a claim for breach of express warranty on behalf of herself and the Nationwide Class over the "No Added MSG" label. (Compl. ¶¶ 100-106.)

"New York breach of express warranty claims require (i) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach." *Brady v. Basic Rsch., LLC.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (emphasis in original); *see also* N.Y. U.C.C. § 2-313(1). A plaintiff must "plead some affirmative statement or fact that forms the basis of the warranty" and that statement must be "definite enough so that its natural tendency is to induce the buyer to purchase." *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 894 (E.D.N.Y. 2018) (quoting *Cowan v.*

*Costco Wholesale Corp.*, No. 15-CV-5552 (PKC), 2017 WL 59080, at *5 (E.D.N.Y. Jan. 5, 2017). "Whether Plaintiff's interpretation of a label was erroneous or reflected a promise made by Defendant necessarily depends on what a reasonable consumer would believe." *Kennedy v. Mondelēz Glob. LLC*, No. 19-CV-302 (ENV) (SJB), 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020) (quoting *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474 (BKS) (TWD), 2016 WL 406295, at *11 (N.D.N.Y. Jan. 12, 2016)). The reasonable consumer standard in the express warranty context is the same as that analyzed under New York's consumer protection laws. *Id.*; *see also Warren*, 574 F. Supp. 3d at 119.

Plaintiff alleges that the "No Added MSG" label was a written warranty to consumers that formed the basis of the bargain for purchasing the Products. (Compl. ¶ 103.) She also alleges personal and class-wide reliance on the warranty.[9] But, as discussed above, a reasonable consumer would not believe that the "No Added MSG" label, when read in conjunction with the disclaimer, warrants a lack of free glutamates in the Products. Accordingly, Plaintiff's breach of express warranty claim must fail.

The court therefore GRANTS the Defendant's motion to dismiss Plaintiff's claim for breach of express warranty.

### 3.   Count V

Plaintiffs also asserts a claim against Defendant under the Magnuson-Moss Warranty Act ("MMWA") based on the same breach of warranty addressed above. "[T]o state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Catalano v. MarineMax*, 590 F. Supp. 3d 487, 510 (E.D.N.Y. 2022)

---

[9] Plaintiff also complied with the pre-suit notice requirement for breach of express warranty claims under New York law, *see Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2018), by mailing a notice letter to Defendant on January 18, 2022. (Compl. ¶ 105.)

(quoting *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015)). Courts have dismissed MMWA claims where a plaintiff has failed to state a claim for breach of warranty. *See, e.g.*, *Catalano*, 590 F. Supp. 3d at 510; *Warren*, 574 F. Supp. 3d at 119-20.

As discussed *supra*, Plaintiff has failed to state a claim for express breach of warranty. She has also not alleged implied breach of warranty. The court therefore DISMISSES Plaintiff's MMWA claim.[10]

## IV.   CONCLUSION

Accordingly, the court GRANTS Defendant's motion to dismiss the Complaint in its entirely. The court dismisses all of Plaintiff's claims with prejudice.

SO ORDERED.

Dated:      Brooklyn, New York
            March 17 2023

                                        s/Nicholas G. Garaufis

                                        NICHOLAS G. GARAUFIS
                                        United States District Judge

---

[10] The court need not discuss whether the "No Added MSG" label is a "written warranty" or whether Plaintiff's MMWA claim is barred by application of the FDCA to reach this conclusion. (*See* Def's. Mot. at 20.)

21